4k487
157 271
157 273

HIRAM W. WARNER *et al.*, Respondents, *v.* EBEN BLAKEMAN *et al.*, Appellants.

RELIEF IN EQUITY. ACTION. FRAUD. MORTGAGE. LIEN. REMEDY OF JUDGMENT CREDITOR FRAUDULENTLY DEPRIVED OF HIS LIEN. EQUITIES BETWEEN BONA FIDE PURCHASERS AND JUDGMENT CREDITORS. LEGAL AND EQUITABLE TITLE TO LANDS. RECEIVER. ACCOUNTING.

"It is the just and proper pride of our matured system of equity jurisprudence, that fraud vitiates every transaction; and, however men may surround it with forms, solemn instruments, proceedings conforming to all the details required in the laws, or even by the formal judgment of the courts, a court of equity will disregard them all, if necessary, that justice and equity may prevail." WOODRUFF, J.

The foregoing passage states, in broad terms, the principle of equity controlling the determination of this case, and, both in sentiment and expression, is worthy to be engraved upon the pillars of the temple of justice. Our concern is, to note the particular conditions and circumstances in the case before us, to which this principle is applied, and under which it becomes operative and effectual to prevent the consummation, under the forms of law, of injustice and fraud. Those conditions, in the form of conclusions derived from the case, may be stated as follows:

1. Where the facts found by a referee constitute fraud, the transaction is not the less fraudulent, that the referee has not employed the word "fraud" or "fraudulently" in describing it.

2. A mortgage, in fact paid and satisfied, though without satisfaction formally acknowledged, is merely waste paper, and the power of sale contained therein is at an end, in so far that it cannot thereafter, by transfer to a third party having knowledge of the facts, be revived and made effectual to destroy or to impair the subsisting lien of a judgment creditor upon the lands covered by such mortgage.

3. As between a judgment creditor and the fraudulent grantee of a conveyance interposed to cut off the lien of a judgment upon the lands conveyed, the lien of the creditor cannot be extinguished nor impaired.

4. Though a judgment creditor has simply a *lien* on lands of the debtor, which can ripen into *title* only by a sale and conveyance, yet, where a fraudulent conveyance has been so far effectual, as, in favor of a *bona fide* purchaser, to withdraw the land from the legal operation of the lien, a court of equity will arrest the proceeds of the conveyance in the hands of the fraudulent conveyancer, or direct those in the hands of the *bona fide* purchaser, not paid over, to be applied in satisfaction of the judgment thus fraudulently deprived of its lien.

5. The appropriate form of remedy for the judgment creditor, where, under a fraudulent foreclosure, sale and conveyance, a legal title has been interposed, paramount, under the forms of law, to his lien, is by an action to set aside such fraudulent conveyance, etc.

6. In such action, ordinarily, the proper and adequate relief would be to declare the fraudulent conveyance void, thus leaving the land subject to the lien of the plaintiff's judgment, and to sale under execution, in the usual course, in satisfaction thereof.

7. But where the intervening right of subsequent *bona fide* purchasers renders such a decree inappropriate, as being in disregard of their title, innocently acquired, derived through the forms of law, and having the sanction of the courts in its support, it by no means follows, that the plaintiff is remediless, and that the fraudulent conveyancer is thus to be left to profit by his wrong.

8. In such case, relief may properly be afforded through the appointment of a receiver, to whom the fraudulent conveyancer shall account for all moneys received from sales to *bona fide* purchasers; to whom he shall assign any mortgages taken for part of the purchase-money of such sales; and to whom he shall convey any of such lands still unconveyed, subject to any contracts to convey, or otherwise: — and to such receiver the *bona fide* mortgagors shall also account for the balance remaining unpaid on such mortgages, and parties holding the defendant's contracts to convey shall likewise account to such receiver for the balance due on such contracts, and will, on the payment thereof, be entitled to receive from him deeds of conveyance. This is, substantially, an amplified or particularized statement of proposition four, above.

9. In effect, the fraudulent conveyancer is thus made a trustee of the judgment creditor, and is required to account to him, through his agent, the receiver, in that capacity.

10. As the judgment debtor may enjoy the rents and profits of the lands upon which the judgment against him is a lien, until a sale, or bill filed to reach them, so his grantee, though fraudulently procuring a title in himself in order to destroy the lien of the judgment, cannot be required to account to the judgment creditor for the rents and profits of the lands while in possession under such title.

This case, in the Supreme Court, will be found reported in 36 Barb. 501, with an elaborate opinion by MORGAN, J.

*N. Foote*, for the respondents.

THIS is an action brought by 'the respondents on the 28th day of November, 1859, against the appellants, to set aside two mortgages on the same premises, and the foreclosure of one of them and subsequent conveyances, on the ground that the mortgages had been fully paid and satisfied prior to the foreclosure, and that the foreclosure and sale were fraudulent and void as to the plaintiffs, they being judgment creditors of the mortgagor. All the defendants, except Robert Turner and Hiram Whedon, answered, putting all the main questions

in issue.  The cause was tried before a referee, at Morrisville, Madison county, in July, 1860.  On the 1st of May, 1861, the referee made his report, finding, among other things, that the $3,000 mortgage (so called) had been fully paid and satisfied prior to the foreclosure of the same, and that said foreclosure and sale was fraudulent and void as to the plaintiffs, and ordered the same set aside, and that Blakeman, acquiring no title by said foreclosure sale, could give no title, therefore ordered the subsequent conveyances of the mortgaged premises to the defendants, Price, Brooks, and Bright & Wylie to be set aside.  He also found that the proceedings had been such between the defendants Blakeman and Turner, the mortgagor and mortgagee in the $1,200 mortgage, relative to the same, that it opened a door through which the plaintiffs entered with a paramount lien, and adjudged the same canceled and satisfied.  Upon which report the plaintiffs, on the 22d day of June, 1861, entered judgment ; and the defendants brought an appeal, which was argued at a General Term in the fifth district, and the judgment reversed — the court holding that the defendants Price, Brooks, Bright & Wylie, being *bona fide* purchasers without notice of the fraud, would hold their respective purchases of portions of the mortgaged premises in preference to the plaintiffs ; but that Blakeman must account to the plaintiffs for the proceeds of the sale of the mortgaged premises to said Price, Brooks, and Bright & Wylie, less the amount due Blakeman on the $1,200 mortgage (if any thing) at the time of the foreclosure of the $3,000 mortgage ; and the cause was sent back to the referee to ascertain and report the amount realized on the sale of the mortgaged premises by Blakeman, and how much, if any thing, was due on the $1,200 mortgage at the time of the foreclosure of the $3,000 mortgage. (See report of the case in 36 Barb. 501.)  The cause was retried in the month of January, 1863 ; and on the 26th day of February following, the referee made his report, finding in substance as follows :

That, on the 10th day of March, 1853, the defendant Robert Turner was seized of the real estate described in the

complaint, subject to two mortgages, one for $1,200, the other for $3,000, and on that day the plaintiffs recovered a judgment against said Turner for $1,326.76, which became a valid lien upon said real estate, subject to said mortgages. On the 26th day of February, 1854, Blakeman delivered to said Robert Turner the said $1,200 bond and mortgage and said $3,000 mortgage as paid and satisfied, and they remained in his possession as paid until the 18th day of November, 1854, when R. Turner sold the mortgaged premises to E. Blakeman for $2,000, subject to said $1,200 and said $3,000 mortgages. Said deed contained a covenant that said R. Turner and wife would warrant and defend said Blakeman, his heirs and assigns, in the quiet and peaceable possession of said premises, against any person claiming under said Turner and wife; and, at the same time, the said Robert Turner delivered to said Blakeman the said $1,200 mortgage and the said $3,000, retaining in his possession the bond accompanying the $1,200 mortgage. The $3,000 mortgage was assigned by Whedon to Blakeman, on the 17th day of February, 1854. That, on the 27th day of November, 1854, Blakeman procured an acknowledgment of the assignment of the $3,000 mortgage from Whedon to Blakeman, and, on the day following, had the mortgage and assignment recorded in Madison county clerk's office, and, on the 16th of December after, commenced a foreclosure of said $3,000 mortgage by advertisement, claiming due on said mortgage, in his notice, $2,676.25. A copy of such notice was served on plaintiffs, on the 9th day of February, following, by mail. At this time, plaintiffs had no knowledge that said $3,000 had been paid. They supposed it to be a valid lien on said premises, until within about a year prior to the commencement of the suit. That, on the 17th day of March, 1855, the premises were sold, pursuant to the notice, and bid off by said Blakeman for $800. The value of the mortgaged premises at the time was $1,200.

On the 11th day of February, 1856, Blakeman sold and conveyed a portion of the premises to defendant Daniel P. Price, for the purchase price of $800, receiving $150 down,

and a mortgage for the balance, payable in twenty equal semi-annual payments. On the 12th day of February, 1856, Blakeman sold another portion to defendant Brooks, for the sum of $300, and, on the 8th day of March, 1859, contracted with defendants Bright & Wylie for the remainder of said premises, together with other property, for $9,200, the price of such remainder being reckoned in the negotiation at $1,000.

The purchase price was to be paid in cloth, a portion of which had been paid at the commencement of this suit; but there was still due and unpaid much more than the value of the remainder of the premises in question.

The several purchasers of the premises in question purchased them in good faith, without knowledge of the facts invalidating or affecting the title of Blakeman thereto.

After the commencement of this action, said Bright & Wylie assigned their said contract with Blakeman to one Finkle, and said Finkle assigned the same to one Roswell B. Smith, and said Blakeman conveyed to said Smith all the property included in the contract except that portion covered by the $3,000 mortgage, for the amount due on the Bright & Wylie contract, less a certain amount then agreed upon, as the value of that portion of the premises covered by said $3,000 mortgage.

That said Blakeman and said Smith, on the 30th day of September, 1861, entered into and executed a contract by which it was agreed that if said Blakeman should be successful in this action, or should in any other way obtain a good, unincumbered title to that portion of the mortgaged premises included in the Bright & Wylie contract, then said Blakeman should convey said premises to said Smith in fee simple, and Smith was to pay for the same the sum of $1,000, with interest from the date of said contract to the time of the delivery of said deed; that, in case said Blakeman should be unable to give such deed, then said Smith to pay $50 per year and the taxes for the use of said premises, as long as he should occupy the same under said contract.

All of said transactions between said Bright & Wylie, Finkle and Smith, and Blakeman, had after the commence-

ment of this action, were had with the knowledge of all the parties thereto of the commencement of this action, and of the claims of the plaintiffs in this action upon said property.

The referee held, that the foreclosure of the $3,000 mortgage by Blakeman was fraudulent, as against the plaintiffs; that a receiver should be appointed, and that Blakeman should pay over to the receiver the money received by him from Price and Brooks, and interest, and a portion of the amount received from Bright & Wylie, and that he assign to the receiver the mortgage received by him from Price, and that he convey to him the premises contracted to be sold to Bright & Wylie, subject to the contract, and that they account to the receiver for the amount remaining unpaid, etc.,—in short, give to the receiver, to be applied upon the plaintiffs' judgment, the entire proceeds of the sale of said premises.

The defendants excepted to the report of the referee, and the bill of exceptions was argued at the General Term of the sixth district, November 17, 1863, and the judgment entered on the report of the referee was affirmed, and the defendants appeal to this court.

I. The foreclosure of the $3,000 mortgage by Blakeman after the same had been paid and delivered up to R. Turner, the mortgagor, by Blakeman, as paid, was clearly a fraud as against the plaintiffs.

So held Justice MORGAN in delivering the opinion of the Supreme Court in this case, reported in 36 Barb. 501. (See also *Truscott* v. *Keilly*, 2 Seld. 162; *Wood* v. *Colvin*, 2 Hill, 566; *Cameron* v. *Irwin*, 5 id. 272; id. 246; *Ledyard* v. *Chapin*, 6 Port. [Ind.] 320; *Sherman* v. *Sherman*, 3 id. 337; *Wade* v. *Harper*, 3 Yerg. 383; *Francis* v. *Porter*, 7 Port. [Ind.] 213; 21 Mo. 321; 18 Johns. 7, 12; 21 Wend. 483; 26 id. 541; 21 Ill. 149; 20 id. 165; Will. Eq. 433; *Perkins* v. *Dibble*, 10 Ohio, 433, 439; *Tarener* v. *Robinson*, 2 Rob. [Va.] 280; *Furbish* v. *Goodwin*, 5 Fost. 426.)

1. True, the simple foreclosure of the mortgage, and the purchase of the mortgaged premises at such sale by Blakeman, could not in and of itself divest the plaintiffs of their lien, because he acquired no equitable title by his fraudulent

act as against the plaintiffs; but it enabled him to spread upon the record a legal paper title, paramount to plaintiffs' lien, which will protect subsequent *bona fide* purchasers of said premises. So held the Supreme Court of the fifth district, in this case, reported in 36 Barb. 501.

2. Nor would simply the sale of said premises by Blakeman, without such paper title spread upon record, divest the plaintiffs of their lien; both were necessary in order to destroy plaintiffs' lien.

3. Where several consecutive acts are necessary to consummate a fraud, the law will refer them all to the first act in the series, and as having been done simultaneously with such first act, and the law will presume Blakeman knew what would be the result of his acts, had Blakeman not avowed that it was for the purpose of destroying plaintiffs' lien, and even if the referee had not found that it was done for the express purpose of destroying plaintiffs' lien.

II. Bright & Wylie purchased a portion of the mortgaged premises of Blakeman by contract, and took possession of the same and paid a portion of the purchase-money in good faith, without knowledge of the facts invalidating or affecting the title of Blakeman to the same — therefore the equitable title to said premises vested in said Bright & Wylie from the date of the said contract, and Blakeman held only the legal title as security for the balance due him on said contract. Blakeman's interest in said premises after the execution of said contract as between him and Bright & Wylie, was personal and not real — therefore Bright & Wylie are entitled to protection in equity, to the same extent as if they had a deed of said premises, and Blakeman a mortgage for the balance of the purchase-money.

In *Smith* v. *Gage* (41 Barb.), POTTER, J., in delivering the opinion of the court, says: "After the vendee in an executory contract has perfected his title to lands in pursuance of it, an action of ejectment will not lie against him by a grantee of the sheriff, by deed, under a judgment against the devisee of the vendor, docketed subsequent to such contract, though such judgment was docketed while a portion of the purchase-

money remains unpaid, and before the vendee receives his deed."

The same principle is affirmed in the court in *Moyer* v. *Hinman* (13 N. Y. 180).

DENIO, J., in delivering the opinion in that case, says: "By a contract for the sale of land the vendor becomes the trustee of the legal title for the vendee, and the vendee the trustee of the vendor, as to the unpaid purchase-money. This is the view of a court of equity; a court of law looks only at the legal title — hence it permits a judgment creditor to subject the land to a sale on execution, though the judgment debtor had before the docketing of the judgment converted it into personalty by contracting to convey it, and received the obligation of the purchaser for the consideration. But when the parties go into equity as they have done in this case, the state of the legal title becomes immaterial, and the only question is whether the party claiming the purchase-money has the better equity."

III. The transaction had between Bright & Wylie, Finkle, Smith and Blakeman, relative to the Bright & Wylie contract, and that portion of the mortgaged premises conveyed by said contract, it all being had with a full knowledge of the commencement of this action, and the claim of said plaintiffs on said premises by each of said persons, can in no way change the right or liabilities of the parties to this action from what they were at the time of the commencement of this action.

IV. The defendants Price, Brooks, Bright & Wylie, being *bona fide* purchasers of the mortgaged premises of Blakeman without notice of the fraud, will hold the premises discharged of the plaintiffs' lien — therefore the plaintiffs will be remediless unless Blakeman can be made a trustee of plaintiffs and compelled to account to a receiver for the proceeds of sale, for the benefit of plaintiffs.

And even if plaintiffs could reach the land thus fraudulently conveyed by Blakeman, and satisfy their judgment out of the same, still it is at the option of the plaintiffs whether they shall do so or sanction the sale, treating Blake-

man as their agent or trustee, and compel him to account
for the proceeds of such sale.

V. Equity will relieve against such fraud by converting
such fraudulent grantor into a trustee for the party defrauded,
and compel him to account to the receiver for the avails of
the sale.

In the case of *Brown* v. *Lynch* (1 Paige, 147), which was
an action brought against a fraudulent vendor to recover the
avails of the sale of a lot of land to a third person, the legal
title to which the vendor had obtained by fraud, the circuit
judge in deciding the case says:

" It is apparent the defendant went into this purchase
with fraudulent views, and has obtained title to the property
by trick and connivance. It is fair for the defendants and
all others to advance their money by speculation or purchase,
but they ought not to do it at the expense of honor and
honesty, and if they make the attempt it is at their peril.
The defendant, in making the sale to Coulter, acted as
trustee of the plaintiff, and is answerable to him for the pro-
ceeds of the sale." And the chancellor, in confirming the
decree, says:

" The cases referred to by the circuit judge fully establish
the principle that this court has power to relieve against such
fraud, and the means to be employed is to convert the person
who has gained an advantage by means of his fraudulent
acts into a trustee for those who have been injured thereby."

In *Pickett* v. *Logan* (14 Ves. 238), Lord ELDON says : " It
has long been settled that if a conveyance has been obtained
by means which in this court have the character of imposi-
tion, fraud, oppression or undue advantage, the person deriv-
ing the title under it is a trustee for the party injured." The
plaintiff in this case is the party injured, and no one else.
Blakeman held the legal title to the premises prior to the
foreclosure, and there were no other liens on the land. (See
also Story Eq. §§ 395, 1265 ; *Jenkins* v. *Eldredge*, 3 Story,
181 ; *Hoye* v. *Hoye*, 1 Watts, 163 ; Tiffany & Bullard on
Trust and Trustees, 170, 101 ; *Murry* v. *Ballou*, 1 Johns.
Ch. 566 ; *Perkins* v. *Hayes*, 1 Cook, 166 ; *Wright* v. *Dowe*,

22 Pick. 55; Lowin on Trust (2d Amer. from 3d Lon. ed.); 2 Wash. on Real Property, 176; *Craigs* v. *Leiper*, 2 Yerg. 193; *Cobb* v. *Thompson*, 1 A. K. Marsh. 514.)

VI. Again, Blakeman, on the foreclosure of the $3,000 mortgage and sale of the premises, can only retain the amount due him on the mortgage at the time of such foreclosure. The balance of the proceeds of the sale he is required to pay over to the junior creditors, by seventy-second rule of the Supreme Court. (Also see rule 136 of the old Court of Chancery.) There was nothing due Blakeman on said $3,000 mortgage at the time of said foreclosure and sale, and Blakeman received on said foreclosure and sale the legal title to said premises — nothing more and nothing less. This he held as trustee for plaintiffs, and in his subsequent sale of said premises to Price, Brooks and Bright & Wylie, he acted as trustee of said plaintiffs, and must account to said plaintiffs for the proceeds of such sale, to the extent of plaintiffs' judgment. A court of equity will not allow Blakeman to be benefited by his fraudulent acts. As soon as the lien of plaintiffs' judgment was reserved from the land, it attached to the proceeds of the sale.

VII. The plaintiffs are not limited in their recovery to the value of the property at the time of the fraudulent foreclosure and sale. Their lien remained perfect until the sale of the mortgaged premises to Price, Brooks, Bright & Wylie, during which time the mortgaged premises had increased in value from $1,200 to $2,100, as it appears that being the price for which Blakeman sold the same.

VIII. Clearly this is a case where the respondents should receive the additional allowance of ten per cent on their judgment.

*Francis Kernan*, for the appellants.

I. The referee erred in deciding, as matter of law, that the foreclosure of the $3,000 mortgage by Blakeman was fraudulent as against the plaintiffs.

1. The referee found, as fact, and decided as matter of law, that this was a valid mortgage in its inception.

2. This mortgage was, on the 17th of February, 1854, a valid security in the hands of Whedon, the mortgagee. On the 17th of February, 1854, this mortgage was assigned and transferred by Whedon to Blakeman, to secure the latter the payment of $3,203, owing to him on the purchase price of a farm which he (Blakeman) had contracted to sell to Turner, and on that day, by Turner's direction, conveyed to Whedon.

3. The amount owing by Turner to Whedon, and secured by this $3,000 mortgage, was never paid, unless it was paid by the farm conveyed to him by Blakeman, and the price of which was secured to Blakeman by the assignment to the latter of this $3,000 mortgage. On the findings of the referee, the $3,000 mortgage was a valid security in the hands of Blakeman when assigned to him on the 17th of February, 1854.

4. This indebtedness of Turner to Blakeman was never, in fact, paid in full. The mortgage was never satisfied. In November, 1854, Turner sold and conveyed the land covered by the mortgage to Blakeman, expressly subject to the mortgage; and the mortgage, with the assignment of the same from Whedon to Blakeman, was then delivered to Blakeman. When, afterward, Blakeman, for the first time, learned of the judgment of the plaintiffs, he foreclosed the mortgage to perfect his title to the land.

5. It is not found, nor was there evidence tending to prove, that Blakeman had any fraudulent intent, or was guilty of any fraudulent act, unless it be a fraud for a party who has honestly and in good faith purchased and paid for land to avail himself of an outstanding mortgage which he received as a muniment of title to cut off the lien of a judgment.

It is submitted that upon the facts found, it was erroneous to hold that the foreclosure of the mortgage was void on account of fraud by Blakeman.

II. Conceding that the mortgage foreclosed had been, in fact, paid in full, the referee erred in holding that the foreclosure was fraudulent as against the plaintiffs.

1. The foreclosure and purchase in by Blakeman of itself, could not in any manner affect the lien of the plaintiffs'

judgment. The lien remained as perfect after foreclosure as before.

2. Blakeman was vested with the equity of redemption before the foreclosure, and he became vested with no greater estate by the foreclosure of a paid mortgage.

It is not found that Blakeman knew or supposed the mortgage was not valid, or that he acted in bad faith. On the facts found, he may well have supposed the mortgage valid. He claimed it to be valid, and served the plaintiffs with notice of his claim, and then acted upon it. Suppose he was mistaken in this claim, how can it be said he was guilty of a fraud in the absence of a finding that he acted in bad faith ?

3. If the lien of the plaintiffs' judgment has been affected at all, it was by the sale of the land by Blakeman to the other defendants; and that is not found, nor does the evidence tend to prove that the same was made with any fraudulent intent, or for any other improper purpose.

III. On the facts found, the plaintiffs are precluded from having relief against the foreclosure of and sale of the premises on the mortgage.

1. Blakeman, in good faith, claimed the mortgage was valid as against the lien of this judgment. It is not proved or found that this claim was made in bad faith. He made it openly and asserted it according to law, giving the plaintiffs notice of it, that they might contest it if they desired.

2. Had Blakeman, by a suit in equity to foreclose the mortgage, made this claim, making these judgment creditors parties defendants, and had they omitted to appear and a decree of foreclosure been taken by default, and the premises been sold, the plaintiffs would have been barred.

3. The plaintiffs were served with a notice of foreclosure and sale, according to the statute. Blakeman, in the notice, stated the amount claimed by him to be due on the mortgage, as required by the statute. (3 R. S. 5th ed., p. 860, § 4, sub. 3.) He, in all respects, proceeded according to the statute. The statute declares that a foreclosure, conducted as prescribed by the statute, to a purchaser in good faith, shall be equiva-

lent to a foreclosure and sale under a decree of a court of equity, to bar the claim of a person having a lien by virtue of a judgment subsequent to the mortgage.

Blakeman was a purchaser in good faith. There is no evidence or finding to the contrary. (3 R. S., 5th ed. p. 861, § 8, as amended in 1844.)

4. It is submitted that, if the plaintiffs can, on the facts found, come in and have relief against this foreclosure and sale, there is no case where judgment creditors may not, in 15 years after a foreclosure under the statute, question and set it aside on the ground that they have discovered facts showing that there was nothing owing on the mortgage, or that the amount claimed to be owing was erroneous.

IV. The referee erred in holding that the plaintiffs were entitled to the proceeds of the sales made by Blakeman, and in decreeing that the latter should account for what he had received from the land.

1. The complaint only asks that the judgment may be enforced against the land. There is no claim made against the proceeds of sales made by Blakeman and received by him.

2. The foreclosure was valid and effectual as against Turner, the mortgagor. He assented to the foreclosure. (36 Barb. 501–516, per MORGAN, J.) By the deed from Turner, Blakeman was vested with title to the premises, subject to the lien of the judgment. Upon plaintiff's theory, after the foreclosure, he owned the premises, subject to the lien of the judgment. He was in no wise personally liable upon the judgment. He sustained no fiduciary relation to the plaintiffs. He owed no duty whatever to them as to the land. He had a perfect right to sell and convey the land. He had the title to it, subject to the lien of the judgment, and had a right to sell his title for the best price he could get.

3. By selling the premises, the lien was transferred with the land, so far as Blakeman was concerned. If the lien was destroyed in consequence of the vendees being _bona fide_ purchasers, the lien did not thereby become transferred from the land to the money received by Blakeman.

4. If Blakeman violated any duty he owed the plaintiffs, he might be liable to them in an action on the case for damages.

5. But surely on the facts of this case, as found, Blakeman is not a trustee for the plaintiffs as to the proceeds from the land received by him.

(a) A judgment creditor has no title to the land. His interest is neither *jus ad rem* nor *jus in re*. (*Collumb* v. *Read*, 24 N. Y. 515.)

(b) He has simply a general lien upon the land which can ripen into a title only by a sale and conveyance in accordance with the provisions of the statute. As a simple judgment creditor, he is not in a condition to become a *cestui que trust* of the land, or its proceeds. (Id.)

6. If Blakeman had transferred the title for the fraudulent purpose of destroying the plaintiff's lien, it is possible he might be liable in an action on the case for damages sustained by the plaintiffs by such fraudulent act, but it would not constitute him a trustee of the proceeds for the benefit of the plaintiffs.

7. The referee has not found, nor would the evidence warrant the finding, that he sold the land to the other defendants for any fraudulent purpose. Whatever may have been his purpose in foreclosing the mortgage, he supposed he had title to the land free from the lien of the judgment, and sold the property in good faith.

8. Conceding that the plaintiffs can have the mortgage sale set aside, and enforce the judgment against the land to the extent of the purchase price not paid to Blakeman, it is submitted that he is not a trustee for them as to the use or rent of the premises or the purchase-money he had received.

9. As owner of the equity of redemption, Blakeman was entitled to the use of the premises until the lien of the judgment was perfected into a title by a sale according to the statute. He was entitled to all he could sell the land subject to the judgment for. Without his owing any duty to the plaintiffs, this judgment makes him their trustee as to this land and its proceeds. It is submitted this is erroneous.

V. The referee clearly erred in directing a conveyance, by Blakeman to a receiver, of the land contracted to Bright and Wylie. So far as that piece of land is concerned, there can be no pretense that the lien of the judgment was impaired.

1. A purchaser by contract is never deemed a *bona fide* purchaser. The legal title still remains in the vendor, and the judgment lien is therefore unimpaired.

2. In this case the purchase-money for that piece was unpaid, and the land would therefore be subject to the lien of a judgment recovered against the vendor subsequent to the sale. (11 Paige, 570 ; 17 Barb. 137; 3 Kern. 180.)

3. For a much stronger reason the lien of the plaintiffs' judgment was not affected by the contract to sell.

4. The only case in which a court of equity will compel the conveyance of land to a receiver for the purpose of satisfying a judgment, is when the lands had been fraudulently transferred before the judgment was recovered, to prevent its becoming a lien, and in such cases the courts will, in general, simply annul the fraudulent cenveyance and leave the judgment creditor to go on and sell in the usual manner. (19 N. Y. 369.)

VI. The only damage which the plaintiffs could sustain by the foreclosure, was being deprived of their lien. This damage could not exceed the value of the land at that time, which was only $1,200. The referee should therefore have limited the whole amount of recovery to that sum.

The plaintiffs were not entitled to the benefit of repairs or improvements made by Blakeman; nor to the rent of the land ; nor to the benefit of Blakeman's trouble and skill in selling the land out in parcels. Nevertheless, by this judgment making him their trustee, they are to reap the benefits of what he did.

And this, too, without proving that the judgment debtors were insolvent, or that the judgment could not be collected from them.

VII. It is submitted that the judgment is erroneous, and should be reversed, and a new trial ordered.

Respondents' reply to appellants' points.

I. Appellants' statement of the facts of the case is incorrect.

1. The sheriff searched for property upon which to satisfy the execution issued on plaintiffs' judgment, but found none, and the sheriff afterward lost the execution.

2. Blakeman knew of plaintiffs' judgment at the time he purchased the mortgaged premises of R. Turner, and he purchased both mortgages of Turner at the time he purchased the premises. Blakeman received the deed of Turner conditionally, that in case he could obtain a good unincumbered title to said premises by said deed, then he was to retain it, otherwise he was to return it to R. Turner, and obtain title by the foreclosure of one or both of said mortgages; and, finding his title, under the deed, would be subject to the lien of plaintiffs' judgment, he abandoned his title under said deed and foreclosed the $3,000 mortgage.

3. True, Blakeman testified, that, at the time of this conditional conveyance, he had no knowledge of this judgment, and that he supposed the two mortgages were valid liens on the premises; but the referee finds that he delivered both mortgages to R. Turner, the mortgagor, as paid and satisfied some six months prior to this time, so he must have known they were not a lien on the premises.

4. The referee finds that Blakeman foreclosed this paid mortgage for the express purpose of cutting off and extinguishing the liens of plaintiffs' judgment upon said premises.

5. The $3,000 mortgage was paid or canceled by Whedon receiving Turner's personal responsibility for the amount he was owing him and assigning the mortgage to Blakeman to secure a debt owing from Turner to Blakeman, and said mortgage was again paid by Turner to Blakeman and delivered up to Turner as paid; so finds the referee.

6. The referee finds that the assignment of the $3,000 mortgage by Whedon to Blakeman under the circumstances was a nullity.

7. At the time Blakeman delivered the mortgages to Tur

ner as paid, he received other security from Turner for the amount due him from Turner, and the case does not show whether Blakeman has realized out of the substituted security what Turner was owing him or not; and even if he has not, he has no interest in the mortgages he surrendered to Turner as satisfied by reason thereof.

II. Appellants' second point is anticipated by respondents' points, except

1. Blakeman surrendered his deed of the mortgaged premises from Turner to himself: he was not possessed of the equity of redemption before the foreclosure.

2. The foreclosure of a paid mortgage, and the purchasing in of the mortgaged premises at such sale for the purpose of destroying plaintiff's lien, and then selling said premises to *bona fide* purchasers, whereby plaintiff's lien is destroyed, is a fraud in law. The court will presume Blakeman knew the legal result of his acts. The whole transaction is too transparent to need comment.

III. It is difficult to see how Blakeman was a purchaser of the mortgaged premises in good faith. He certainly knew the mortgage had been paid and surrendered to the mortgagor as paid. He also knew that the notice he published on the foreclosure, claiming $2,675.25 to be due on the mortgage, was untrue; and further, the referee finds that this was done to defraud the plaintiffs.

IV. The complainant asks to have the foreclosure set aside, and the conveyances to Price, Brooks and Bright & Wylie, and to have the mortgaged premises sold to pay plaintiffs' judgment, or that said plaintiff may have such other and further relief in the premises as may be agreeable to equity. Clearly the court has the power, as the pleadings stand, to order the proceeds of the sale applied in payment of plaintiffs' judgment. So held MORGAN, J., in this case (36 Barb. 501, 516), also PARKER, J., whose opinion is contained in the printed case.

V. Blakeman, in his negotiation with Turner to buy the mortgaged premises, agreed to pay for the same $2,000, subject to these two mortgages, and ran his risk in getting a

good title. This was on the 18th November, 1854. In February following Blakeman sold the mortgaged premises for $2,100, only $85 worth of repairs done on the premises, while Blakeman held the legal title to the same. It is difficult to account for these premises not being worth over $1,200 in December intermediate the two periods. The defendant Turner and S. Turner testified the premises were worth from $2,000 to $2,500 at the time Blakeman purchased the same at the foreclosure sale in December 1854.

WOODRUFF, J.   The case herein consists of a statement of the facts which the evidence "tended to show," and the finding of the referee thereupon. I discover no finding of fact of which it can be said there was no evidence to establish it. On the contrary, the result of my examination is that the findings are sustained by the evidence, which, according to the statement of the proofs, was given.

No question of law, therefore, can be raised warranting us in reviewing the findings of fact stated in the case. The facts must, on this appeal, be taken to be as they are found by the referee.

Without giving the numerous details of the transactions which produced the result, the simple statement of the material facts found, is this :

On the 10th of March, 1853, the plaintiffs recovered a judgment against Robert Turner, who then owned the real estate in the county of Madison, which is the subject of controversy in this action, and by the docketing of such judgment in that county, the plaintiffs acquired a lien upon the said premises.

The premises were then subject to two mortgages — one, given by the said Turner and another, to the defendant Blakeman, to secure the payment of $1,200 cash lent; the other, given by the said Turner to Hiram Whedon, conditioned on its face for the payment of $3,000, but in part given to secure an existing indebtedness to a small amount, and contemplated future advances, and also to indemnify Whedon

against certain indorsements, and contemplated future indorsements for the benefit of Turner.

On the 13th day of April, 1853, at or before which time Whedon had actual notice of the plaintiff's judgment, the balance due from Turner to Whedon was $1,782.28, and Whedon's indorsement, to the amount of $600, was outstanding.

Transactions were had between the parties on and prior to the 17th of February, 1854, the result of which was that on that day the said Whedon gave up the $3,000 mortgage, consenting to rely thereafter solely upon the personal security of Turner for any balance remaining due to him; but, instead of delivering that mortgage to Turner, or acknowledging satisfaction thereof (the same not having, to that time, been recorded), he executed a formal assignment thereof to the defendant Blakeman without any consideration, Blakeman paying no consideration therefor, none of the debts or obligations for which it had been held as security being transferred to Blakeman, and the latter neither paying nor agreeing to pay the same, nor any of them.

On the same day, and prior thereto, Turner made arrangements, by transfers of property and otherwise, in pursuance of which the $1,200 mortgage was paid in full, and in money received from Turner, or upon his order. And on the 26th of February, the said Turner and Blakeman had a settlement of their various transactions, in which a balance was found due to Blakeman, after payment of the said $1,200 mortgage, of $1,120.11, which they then agreed should be secured only by a distinct and separate security, which was then given to Blakeman by Turner, and Blakeman delivered to Turner both mortgages, as paid and satisfied.

About nine months afterward, a negotiation was had between Blakeman and Turner, resulting in the purchase of the premises by the former, for the price of $2,000, and the latter accordingly executed to Blakeman a deed in which the premises were declared to be subject to both of the before-named mortgages, and at the same time restored the two mortgages to Blakeman's possession, retaining, nevertheless, the bond

which the $1,200 mortgage was originally given to secure, and in December next ensuing, Blakeman went through the form of a foreclosure of the $3,000 mortgage, by advertisement pursuant to the statute, declaring in his notice of sale that $2,675.26, was due on the said mortgage, and transmitted that notice, by mail, to the plaintiffs herein. At the sale made pursuant to the advertisement, Blakeman bid off the premises himself, at the price of $800, and entered into possession.

The object and purpose of this form of foreclosure and sale was to cut off and extinguish the lien of the plaintiff's judgment upon the premises.

The value of the premises at the time of the sale was $1,200; but afterward, and before the commencement of this action, Blakeman sold part of the said premises to *bona fide* purchasers, receiving money in part payment, and a bond and mortgage on the premises sold to secure the other part of the purchase-money, and had contracted to sell the other part of the premises, but the contract had not been carried into execution by conveyance and full payment. The aggregate price at which he sold exceeded the value at the time of the attempted foreclosure.

Upon these facts there are two principal questions — First, is the lien of the plaintiffs' judgment extinguished? and, second, if not, to what relief, if any, are they entitled in this action?

The transaction in question was a fraud upon the plaintiffs. The facts constitute fraud, and no less so because the referee in his finding has not employed the word "fraud" or "fraudulently," in order to describe or characterize them.

A mortgage that never was a security in the hands of the defendant, Blakeman, as against the plaintiffs, for any thing; which had been given up by Whedon, the only party in whose hands it was a security, after it had to his satisfaction answered the purposes for which it was given; which had again been given up by Blakeman himself, as paid and satisfied, to the mortgagor, is set up nine months afterward for the fraudulent purpose of cutting off the plaintiffs' lien upon the mortgaged

premises. Not only so, but, manifestly in order to deceive the plaintiffs, it is falsely alleged in the notice of sale that there is due thereon nearly $3,000, a sum greater than the value of the premises; and this, in order that Blakeman may purchase the premises, divested of the plaintiffs' lien, for which he had negotiated before the foreclosure was commenced.

Blakeman, Whedon and Turner, appear to have regarded this mortgage as a formal paper that could be handed from hand to hand, and, however often satisfied by the accomplishment of all the purposes for which it was delivered, to have new efficacy at each successive delivery as a continuance of its original lien, no matter what intermediate rights had accrued to others. And, after it had been given up to the mortgagor as paid and satisfied, and had so remained for nine months, they conceive the idea that it may be used, not as a security for a new debt, but for the mere purpose of the false representation that it is a subsisting, valid instrument, by means whereof the plaintiffs, deceived into submission to the apparent lien, may be deprived of their security.

It would not be creditable to the administration of justice if such a scheme could be successful; and it is clear, I think, that the rules of law and principles of equity are not ineffectual for its prevention.

Nor do I think any extended discussion of the subject necessary. It is the just and proper pride of our matured system of equity jurisprudence that fraud vitiates every transaction; and, however men may surround it with forms, solemn instruments, proceedings conforming to all the details required in the laws, or even by the formal judgment of courts, a court of equity will disregard them all, if necessary, that justice and equity may prevail.

No uncertain or difficult questions of equity are, however, involved in this case. The mortgage in the hands of Blakeman, when he attempted to foreclose it, was mere waste paper. It had long been *functus officii*. The power of sale contained therein was at an end.

Unless, then, the form of a foreclosure, which Blakeman

set on foot for the fraudulent purpose stated, gave him some new rights, the mortgage, and what he did under it, remain as to him but waste paper still.

What says the statute? Simply and only that a sale duly advertised and conducted, made to a purchaser in good faith, shall be equivalent to a sale under a decree of foreclosure in equity. (Laws of 1844, chap. 346, § 4; 3 R. S., 5th ed. 861, § 8.)

I have no occasion, perhaps, to say, that, upon the facts found in this case, no court of equity would hesitate to open a decree and set aside a purchase by a complainant. Here there is no decree to be opened; the plaintiffs' only recourse is to an action. There is no occasion to consider this, because the statute declaring the effect of the advertisement and sale to Blakeman, gives no ground of claim to him, that he acquired any rights thereby. He has no color of pretense to be a *bona fide* purchaser.

The case of *Cameron* v. *Irwin* (5 Hill, 272) justifies a doubt whether, under circumstances such as these, the power of sale having been extinguished by payment of the mortgage, even a *bona fide* purchaser would have acquired title. But the defendant, Blakeman, is no such purchaser. Indeed, I greatly doubt whether the holder of the mortgage, himself, directing the foreclosure for his own benefit, can ever become the purchaser so as to preclude inquiry into any question of antecedent fraud, so long as the property remains in his hands. But, here, every step taken by Blakeman is infected by the false and fraudulent endeavor to cut off the plaintiffs' lien by artifice and misrepresentation, using the forms of law to conceal the truth and effect the object.

This apparently harsh language is, I think, not an exaggerated statement of the true aspect of the case in a court of equity. It may be, that Blakeman and Turner were blinded by interest or misled by the want of correct information, as to the effect of their acts, and, in a sense, they may have honestly supposed that it was not wrong to try to cut off the plaintiffs' judgment without paying it; but the transaction

must be tested by its own merits or demerits, as the case may be.

My conclusion is, that, even without invoking those principles of equity which, were the language of the statute less explicit, would forbid the acquisition of title by Blakeman to the prejudice of the plaintiffs by such means, the statute gives no effect to the foreclosure, whatever, in favor of the fraudulent party, and that, as to Blakeman, the lien of the plaintiffs' judgment is, in equity, wholly unimpaired.

2. To what relief, if any, were the plaintiffs entitled in this action?

It is suggested, that, if the foreclosure and purchase by Blakeman are not effectual to cut off the lien of the plaintiffs' judgment, there was no foundation for this action, because the plaintiffs might proceed to sell by execution, and collect their judgment out of the real estate.

To this, there are two answers, either of which seems to me sufficient, — first, the proceedings for the foreclosure were regular; there is nothing on the face of the mortgage or of the proceedings to indicate that the title acquired by Blakeman was not entirely free of the plaintiffs' lien. It was the clear right of the plaintiffs to file their bill to remove this apparent legal impediment, and practically fatal hindrance, to the collection of their judgment. The practice of the court to entertain such bills for the benefit of judgment creditors to set aside fraudulent conveyances or assignments, petitions, mortgages and collusive judgments, is familiar to the courts and to counsel. Second, it is not clear, that those who subsequently purchased from Blakeman in good faith, without notice of any fraud, are not to be regarded as within the equity of the statute which makes the title of a *bona fide* purchaser at the sale equivalent to that acquired under a decree. That view of these rights was taken in the court below, and is not inconsistent with the grounds upon which it is denied that Blakeman acquired any title which can avail him against these plaintiffs, and, notwithstanding the doubt expressed in *Cameron* v. *Irwin* (*ubi supra*), whether even a *bona fide* purchaser would acquire title, there was still ground

for invoking the jurisdiction of a court of equity as to those purchasers, to the end, that, if they were regarded as entitled to protection as *bona fide* purchasers, the unpaid purchase-money might be held to stand subject to the plaintiffs' lien in the place of the land they had so purchased.

The question then recurs, to what relief are the plaintiffs entitled? The answer has been, I think, correctly given in the Supreme Court. It is, in effect, that, as to Blakeman, they are entitled to subject to their lien all the proceeds of the sale of the lands upon which their judgment was a lien. This does to him no wrong, and it only gives to the plaintiffs their equitable right. It takes from Blakeman the fruits of his fraud, and it gives to the plaintiffs that which, but for the fraud, they could obtain by enforcing their lien. In short, the defendant, by device held fraudulent as to the plaintiffs, has converted into money, bonds and mortgages, and an executory contract of sale, the subject-matter in contest; and, in equity, that into which the land has been by such means converted, stands, in the hands of the fraudulent party, in the place of the land itself.

This principle, too, is familiar, and is acted upon daily in administering equitable relief to judgment creditors, impeaching fraudulent assignments and transfers of real and personal estate alike.

No right, legal or equitable, of the purchasers is affected by subjecting the purchase-money to the plaintiffs' claims, for in the destination of that money they have no interest, and there is, therefore, on the merits, no equitable ground, whatever, for their appeal; and Blakeman cannot complain that the court below gave efficacy to his own conveyances and contracts with the other defendants, suffering them to operate in their favor as he intended, and still insists, they should.

The very able and ingenious argument submitted on behalf of the appellants rightly states, that a judgment creditor has simply a lien on the land, which can ripen into title only by a sale and conveyance. But the case relied upon (*Collumb* v. *Read*, 24 N. Y. 515) by no means shows, that a court of

equity will not arrest the proceeds, where the fraudulent con-
veyance has been so far effectual, as, in favor of a *bona fide*
purchaser, to withdraw the land itself from the operation of
the lien.

The legitimate result of the appellants' argument is this:
"The judgment creditors have a lien on the land; if, by a
fraudulent device through the forms of law, I can clothe
*bona fide* purchasers with a title, I can hold the proceeds or
fruits of the fraud, and set the creditors at defiance." I
think the rights of creditors cannot be defeated by such
means, and that the power and jurisdiction of courts of
equity are efficient to prevent it.

It is true, that, ordinarily, the proper and the adequate
relief is to declare the fraudulent conveyance void. This is
all that is necessary for the plaintiffs' protection or redress.
It does not follow, that, where the intervening right of a
*bona fide* purchaser renders that decree inappropriate, the
plaintiffs are remediless, and the defendants are to profit by
their own wrong.

The rule, where judgment creditors acquire a lien upon
real estate, and file a bill to reach it, is clearly and compre-
hensively stated in *Cooke* v. *Smith* (3 Sandf. Ch. 338): "A
creditor who, by his judgment in respect of real estate, his
execution issued as to movables, and his execution returned
as to things in action, is entitled to file a bill to set aside a
fraudulent conveyance, sale or assignment, may follow the
proceeds of the property transferred, into the hands of any
number of intermediate assignees, and until the property or
its proceeds lodge in the hands of a *bona fide* creditor who
has received it and applied it upon his debt, or of a *bona fide*
purchaser without notice of the fraud."

To the objection that a receiver should not have been ap-
pointed, and Blakeman directed to convey to him the lands
not yet conveyed to the purchasers, it is, I think, sufficient
to say, that the power of the court is ample, where the ap-
pointment of a receiver is necessary in order to carry into
execution and enforcement the equitable rights established
by the decree. No doubt, that, after the decree in this case

had declared the plaintiffs to have a valid subsisting lien upon the land by virtue of their judgment, unimpaired by the attempted foreclosure, but nevertheless subject to the rights acquired by the subsequent purchaser by his contract with Blakeman, — the plaintiffs might have issued execution and sold that portion of the land subject to such contract; but, the court having jurisdiction of the whole subject of the relief, and a receiver being eminently proper for the collection of the bonds and mortgages owing by the purchasers of other portions of the land already conveyed by Blakeman, there was great reason for acting distinctly in affirmance of the contract of sale, and requiring the purchaser who had not received a deed to pay to the receiver; and yet this could not be done in justice to such purchaser, without assuring to him a conveyance when his payments were completed, and this required that the court should require Blakeman to convey to the receiver.

It is an error to say that the plaintiffs were, in case of such a contract, shut up to the exercise of their purely legal rights, to wit, a sale and execution, subject to the contract; they were, in this respect, in the same condition as a judgment creditor, whose judgment is recovered after a *bona fide* contract of sale has been made — both hold judgment liens, subject to the contract. Of such a creditor, DENIO, J., says in *Moyer* v. *Hinman*, in this court (3 Kern. 184): " The creditor had, at *law*, the right to acquire the legal title to the land by means of a sheriff's sale, and a purchase by himself; but *in equity*, his rights were limited to the future payments to be made by the plaintiff" (the purchaser).

These payments the plaintiffs here in a court of equity have secured, and is the only mode in which the purchaser could be also properly protected, and the rights of the plaintiffs enforced if the purchaser should not perform his contract.

I do not find any thing in the decree appealed from, which requires Blakeman to pay over the rents and profits of the premises, or value of their use while in possession, though the argument for the appellant seems to assume that it is so adjudged. The decision in *Collumb* v. *Read* (24 N. Y. 515),

would condemn such a requirement, since, notwithstanding the plaintiffs' lien, the judgment debtor might have enjoyed such rents until a sale or bill filed to reach them.

But in regard to the increased value of the property since the attempted foreclosure, the decree is right. If the property had been retained by Blakeman in his own hands, the decree would have declared that foreclosure void and inoperative as against the plaintiffs; and, in that case, their lien, always good as against Blakeman, would have attached to whatever enhanced value had accrued to the land, and that value would have been secured to the plaintiffs.

That is awarded to them, down to the time of the respective sales by Blakeman, and no substantial reason can be given why Blakeman, and not the plaintiffs, is entitled to it.

I think the judgment must be affirmed.

Judgment affirmed.