JENNIE E. RICHARDSON, APPELLANT, v. MARY ANN TRIMBLE AND OTHERS, RESPONDENTS.

*Judgment creditor's action — when the debtor may attack the judgment as obtained through fraud.*

This action was brought by the plaintiff, as a judgment creditor of the defendant, Mary Ann Trimble, to set aside as fraudulent the conveyance of certain real estate made by her to the other defendants in the action. The judgments were recovered by the plaintiff, upon coupons attached to bonds issued by the defendant, Mary Ann Trimble, in 1869, payment of which was secured by a mortgage upon the Trimble Opera House, in the city of Albany. Both of the judgments were recovered by default; one December 16, 1880, for coupons falling due in November, 1870, and November, 1871, and the other on January 22, 1881, for coupons falling due on November 1, 1874. In November, 1869, the defendant Trimble leased the opera house to one Barnes for eleven years, and agreed to sell and convey the property to him. In 1872 Barnes assigned the lease and contract to the husband of the plaintiff. Both Barnes and the plaintiff's husband agreed to pay all the bonds and coupons. In 1872 the defendant Trimble conveyed the opera house to one Leland.

The defendant Trimble claimed that she was induced by the persuasions and fraud of Richardson, the plaintiff's husband, to permit the judgments above mentioned and other similar judgments to be recovered against her so as to enable the plaintiff to proceed against the opera house property by the foreclosure of the mortgage; that the defendant, who was in feeble health, and of advanced age, did not then know and remember that the said coupons had been, prior to that time fully paid, and that she had been fully released and

discharged from all claims and demands by Richardson. It appeared that, in an action brought to foreclose the mortgage, it had been found as a fact that the said coupons had been in fact fully paid and discharged, and they were conceded to have been so paid by the plaintiff's attorney upon the trial of this action.

*Held*, that it was proper for the court to admit the evidence of these facts, and upon the establishment of the truth of the defense set up in the answer, to vacate the judgments and direct a judgment to be entered in favor of the defendants herein.

APPEAL from a judgment recovered on a trial at Special Term.

*W. W. Cook*, for the appellant.

*Aug. R. McMahon*, for the respondents.

DANIELS, J. :

The action was brought by the plaintiff as a judgment creditor of the defendant Mary Ann Trimble, to set aside as fraudulent the conveyance of certain real estate, made by her to the other defendants in the action, to be paid for by her future support and maintenance. To resist the action, on their part, it was alleged that the judgments were fraudulently recovered, and they were so found to be by the learned judge presiding at the Special Term, and judgment was accordingly directed for the defendants, denying the relief and vacating such judgment. At the commencement of the trial the objection was taken to the admissibility of any evidence tending to establish the truth of the allegations contained in the parts of the answers in which these judgments were in this manner assailed. But it has become an established rule, settled in the administration of justice, that where a judgment has been fraudulently obtained, it may either be set aside by an action brought for that object, or the judgment itself may be defeated by a defense to any legal proceeding taken upon its authority. If any doubt could have formerly existed upon that subject, it has been removed by the provisions of the present, as well as of the preceding, Code. (*Mandeville* v. *Reynolds*, 68 N. Y., 529.)

The two judgments were recovered by the plaintiff upon coupons, attached to instruments in the form of bonds, issued by the defendant Mary Ann Trimble in the fall of 1869. There were 240 of these instruments, in part for the sum of $100 each, and in

part for the sum of $500 each, with yearly warrants or coupons, including interest attached to them. The coupons upon which the first judgment was recovered, being for the payment of interest and a proportion of the principal of the debt, became due in November, 1870, and November, 1871, and the coupons upon which the other judgment was recovered became due on the 1st of November, 1874. One of these judgments was recovered on the 16th of December, 1880, and the other on the 22d of January, 1881, and they were each recovered by default for want of answers. The instruments to which the coupons were attached, together with all the others issued by the defendant Trimble, were secured by a. mortgage upon what was known as the Trimble Opera House, in the city of Albany. This mortgage was executed and delivered, for the benefit of the persons holding the bonds, by the defendant. Trimble, to William H. Taylor, Charles E. Leland and Paul Cushman, as trustees, and the property seems to have been of sufficient value to pay the indebtedness, together with the interest accruing upon it.

Early in November, 1869, the defendant Trimble rented the opera house to Lucien Barnes for the term of eleven years, and also agreed, in writing, to sell and convey the property to him. As a part of the consideration for the agreement, he covenanted with her to pay all of these obligations, with the accompanying coupons. In May, 1872, Aaron Richardson, the husband of the plaintiff, acquired this lease and contract of sale, and in like manner agreed to pay the same indebtedness, and in December, 1872, the defendant Trimble conveyed the opera house to Warren F. Leland. By her answer, it was alleged that the coupons, upon which judgments had been recovered, together with the other obligations entered into by her and secured in this manner, had been fully paid. And the evidence which was given upon the trial so conclusively established the fact of their payment, that after it was concluded, it was conceded by the plaintiff " that the effect and result of the testimony produced is to prove the facts alleged in the third and fourth separate defenses in the answers herein." But the plaintiff did not concede the validity in law or equity of such defenses. It was also made to appear that on the 5th of March, 1875, and after the coupons upon which the judgments

were recovered had become due, that a release was mutually exe-
cuted by the husband of the plaintiff, and the defendant Trimble,
and others, releasing each other from all demands, except the
claims of the defendant Trimble against Barnes. The coupons
which had matured previous to that time were paid either by Barnes
or Richardson, under the obligations respectively assumed by them
in the lease and agreement for the sale of the property and its
acquisition from Barnes by Richardson. And they were there-
fore not only paid in fact, but released as well by this instrument.
At the time when the actions were brought against the defendant
Trimble for the recovery of the amounts for which the coupons had
been issued, with interest upon them, they had accordingly been
fully paid and satisfied, and no right of action whatever existed in
favor of the plaintiff, who probably acquired them from her hus-
band, against the defendant Trimble, upon these coupons. Both
by the fact of payment and through the effect of the release, she
had an undoubted defense against the claim of the plaintiff in each
of the actions in which the judgments were obtained.

But her allegations are, in the third and fourth subdivisions of
her answer, that she was induced by the persuasion and fraud of
Richardson, the plaintiff's husband, to permit these and other simi-
lar judgments to be recovered against her, to enable the plaintiff
to proceed against the opera house property, which had then passed
into the hands of Charles E. Leland, and appropriate it to the pay-
ment of these alleged debts. The object seems to have been to
recover judgments upon these obligations against the defendant
Trimble, and upon their foundation to enforce the mortgage given
for their security against the opera house property then held by
Leland. In this unlawful enterprise the evidence showed that
Richardson acted on behalf and under the authority of the plaintiff
in this action. The defendant then was, as the fact has been alleged
in the third subdivision of her answer, and admitted by the conces-
sion made at the close of the trial, "in feeble health, and of
advanced age, and because of her age and infirmities, and that she
had transacted nearly all the matters relating to said securities by
attorneys, instead of personally; she had wholly forgotten that said
Richardson had released and discharged her from all claims and
demands against her as hereinbefore alleged; that years before she

had parted with all her title to said property, and the only concern she had therewith was a desire that the said obligations incurred by her upon the credit thereof should be paid thereout, if any of such obligations were still unpaid." It was also alleged in the third and fourth subdivisions of the answer that Richardson, who was the real plaintiff in and directed and controlled all the actions in which the judgments were recovered, fraudulently represented to the defendant Trimble, and to her agent and attorney for her, that he was the owner of a large number of the obligations, with their coupons, secured by the mortgage ; that they never had been paid either by Barnes or Warren F. Leland, to whom the property had been conveyed, or any other person, who had become bound to pay them." " And that said persons designed and intended to defraud him, the said Richardson, of the amount of said obligations held by him, and to procure to be made, and to make, a satisfaction and discharge of the said mortgage given by this defendant to said trustees, to secure the payment of said obligations, and thereby prevent a resort by said Richardson under said mortgage to said opera house." It was also averred that he stated and represented " that he did not make, and would not make, any claim against her personally upon said obligations, or any thereof; that all claim against her, upon many thereof, was barred by the statute of limitations, but that she should and in conscience ought to assist him as far as possible in enforcing his claims on said obligations against said property." And " that she need not, and ought not, to defend said actions, as he would never charge her personally with the judgments recovered in said actions, if any, or enforce, or allow to be enforced against her personally, any such judgments." It was further averred that the defendant Trimble " was wholly ignorant of the falsity of said Richardson's statements and representations to her hereinbefore set forth at the time they were made, and implicitly believed the same to be true; that at said time she had wholly forgotten and was ignorant of the fact that said Richardson had released and discharged her from all claims and demands." It was also stated in the answer that on or about the 12th of July, 1880, Charles E. Leland, for a valuable consideration paid to him by her, " promised and agreed to indemnify and save her harmless from any and all liability in

every respect, and to the same extent as the said Warren F. Leland, was then bound to indemnify and protect her, and did further covenant and agree to and with this defendant, that he would save and indemnify and protect her from any and all claims, demands and liabilities, upon any and all of said obligations and coupons made by her, and that he would pay and discharge such thereof as might be legally due and payable, and defend at his own cost and expense any and all suits and proceedings against her thereon or upon any thereof." This agreement it was alleged was procured for the benefit of the plaintiff's husband, and was soon afterwards delivered to him, and that it was after that that the suits were brought against her in which these and other judgments were recovered by her. The evidence upon the trial tended very directly to prove the truth of all these statements, and upon its effect the concession already mentioned was made on behalf of the plaintiff and that concession placed these facts beyond controversy as established in the case. (*Greentree* v. *Rosenstock*, 61 N. Y., 583, 591.)

After these representations had been made and the defendant Trimble had been induced to rely upon them and some of the judgments had been recovered, an action was brought in the name of Paul Cushman, one of the trustees, to foreclose the mortgage upon the opera house, in which it was alleged in the complaint that a portion at least of the instruments and coupons made by the defendant Trimble remained unpaid, and demanding judgment that the " prem ises or so much thereof as may be sufficient to raise the amount due upon the obligations and coupons secured by said mortgage for principal and interest, and the costs of this suit, and which may be sold separately without material injury to the parties interested, may be decreed to be sold according to law." To this action the present plaint ff, her husband, the defendant Trimble and others, were made defendants, and in it the proof appears to have shown that this defendant, at the instance of Richardson, served an answer alleging, after making a statement of eight different judgments recovered against her, and probably including the two upon which this action has been brought, " that all said judgments are due and unpaid and this defendant claims that the amount thereof should be paid from the proceeds of the sale of the premises in said complaint described." And in making that demand she was entirely right if her obliga-

tions upon which the judgments had been recovered still remained unpaid or undischarged. But upon the trial of that action, it seems from the judgment in it to have been proved that these obligations had all been paid, and the referee to whom the trial of the issues in it was referred, held "that said coupons were not, nor were any of them, at the commeneement of this suit, a valid or legal indebtedness against the defendants Mary A. Trimble and Charles E. Leland, or either of them." And all other suits for them were directed to be restrained and enjoined in the final conclusion of the referee.

This judgment was objected to as evidence, upon the trial of this action, and an exception was taken to the ruling of the court, allowing it to be used as such. But this exception has no legal foundation to stand upon, for the judgment was admissible certainly to prove the fact that Richardson had been defeated in the object which he represented to the defendant Trimble it was his sole purpose to secure. And in that manner a motive had been supplied for diverting these judgments from the object which he represented it was his sole purpose to accomplish by means of them, to their enforcement as legal obligations against the defendant Trimble and her property. It was also admissible, as these persons were all parties to that action, to show the ground upon which it had failed, and that this ground was the payment and satisfaction of the demands alleged to still exist as its foundation. But even if it should not have been admitted, as the final concession made included this fact of payment, and established it beyond controversy, the roll itself was entirely harmless, and added nothing to the force of the case made in behalf of the defendants.

The agreement already stated under which the judgments were recovered by the plaintiff against the defendant Trimble, so far controlled their effect as to prevent the use which the plaintiff now endeavors to make of them as legal obligations. The agreement was, so far, entirely lawful, as it was made between Richardson, acting on behalf of his wife, and the defendant Trimble and her attorneys. (*Briggs* v. *Law*, 4 Johns. Ch., 22 ; *Springsteen* v. *Power*, 3 Robt., 483 ; *Moses* v. *McDivitt*, 88 N. Y., 62.) And that this use of the judgments to be recovered was intended to be restrained and prevented, not only appears by the proof and the concession of the

plaintiff, which have already been mentioned, but further and beyond that, by a letter proved to have been in the handwriting of Richardson, although not signed by his name, written to her daughter, Mrs. Cole, who is one of the defendants, and in which he said :

Dear Madam.—I write this to inform you that your mother need not feel uneasy about the suits that have been commenced against her, as the parties have no wish to injure her or you either, but will do anything to satisfy you or her of their good intentions. You or her, with any true friend, can call on Mess. Lindleys or Mr. F. L. Hall, and you can get undoubted guarantees that they will not harm her, but will try to help her get what belongs to her. You know well that your mother was cheated out of the Trimble Opera House by the Lelands, and there is nothing to be gained by acting with them against her own interest. You can rest assured that the parties do not intend any harm to your mother.

FROM A FRIEND.

After placing the defendant Trimble, as well as the other defendants, in this position, by the representations and agreement which were made, and under which the judgments were permitted to be recovered, the law will not allow the plaintiff to enforce them against the defendants, in violation of such representations and agreement.

To allow that to be done would be to permit a fraudulent use to be made of these judgments. For fraud, " in the sense of a court of equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." (1 Story's Eq. Jur. [5th ed.], § 187.) And this rule has, in effect, been applied to a judgment recovered by one party against another. For it has been held in chancery that relief will not only be given against a judgment at law, on the ground of its being contrary to equity, when the defendant has been prevented from availing himself of his defense by fraud or accident, but also where that has been prevented by " the act of the opposite party unmixed with negligence or fraud on his own part." (*Foster* v. *Wood*, 6 Johns. Ch., 87 ; 2 Story's Eq. Jur., § 887.) And this rule was expressly sanctioned in *Dobson* v. *Pearce* (2 Kern., 156, 165), and to the same effect is *Reigal* v.

*Wood* (1 Johns. Ch., 402); *Warner* v. *Blakeman* (4 Keyes, 487); *Mather* v. *Parsons* (32 Hun, 338); *Shedden* v. *Patrick* (28 Eng. Law and Eq., 56); *United States* v. *Throckmorton* (98 U. S., 61). In *Huggins* v. *King* (3 Barb., 616) the plaintiff, in an action for a good consideration, agreed to discontinue it, but in violation of his agreement took judgment against the defendant, and that was held, under the circumstances, sufficient to justify the conclusion that the judgment was fraudulent in its character. The case of *Engel* v. *Scheuerman* (40 Ga., 206) is also a decisive authority in favor of the defense made to this action. There a judgment had been recovered in the State of Georgia for $5,000, which had been paid. While that action was pending a suit in this State was brought for the same demands. The plaintiff in both actions led the defendant to believe that the suit here would be abandoned as the result of the payment, but he afterwards proceeded in it to judgment, without an opportunity for the defendant to obtain his proof. This judgment was held, in the action afterwards brought to restrain its collection, to be inequitable, and against conscience, and its collection was accordingly restrained by the court. And in *Farrington* v. *Bullard* (40 Barb., 512, 518), a similar view was taken of the law, although it was held to be inapplicable, in the disposition of that case as it was then before the court.

As the facts have been proved and established in this case, it was one which not only justified, but pre-eminently required, the application of this equitable principle. The defendant Trimble had been imposed upon by the plaintiff's husband, acting in her behalf, and under her authority, in the recovery of these judgments against her. And no case of greater injustice could well be imagined than would exist if this court should now permit these judgments to be used in the manner in which the plaintiff has endeavored to use them against the defendant Trimble and her grantees. It would be harsh, unjust and oppressive to allow the plaintiff, in violation of the agreement made and of the representations acted upon, to maintain her action for the collection of these judgments out of the property of the defendant against whom they were recovered. The authorities, to which reference has been made, will not permit that to be done, even if the court without them could so far forget its own sense of justice and right as to allow that result to be

accomplished. No other objection taken to this judgment deserves consideration. It was entirely correct, and it should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.