HASKELL B. WARREN, an Infant, by EDWARD P. COYNE, his Guardian ad Litem, and EDWARD P. COYNE, as General Guardian of said Infant, Appellants, *v.* THE UNION BANK OF ROCHESTER and GILMAN H. PERKINS, Respondents, Impleaded with HOLMES B. STEVENS.

1. GUARDIAN AND WARD — RELATION OF TRUST. The relation between a general guardian and his infant ward is that of trustee and *cestui que trust.*

2. CARRYING ON BUSINESS. A general guardian, as such, has no right or authority to carry on a business in the name of his ward and employ therein the capital or credit of the latter, even where he simply continues the business of a testator.

3. BREACH OF TRUST. If a general guardian, in the absence of an express and sufficient authority, embarks the property of his ward in business, he is guilty of a breach of his trust, and such unlawful employment of the property constitutes a *devastavit* of the trust estate.

4. TRUST FUNDS IN HANDS OF THIRD PERSONS. Trust funds invested by a trustee in the hands of third persons who have knowledge of their character, still remain impressed with the obligation of the trust in the hands of the holder, and are subject to be reclaimed and restored to the trust fund.

5. CONTRACT AS TO TRUST PROPERTY. It is beyond the power of a trustee to bind the estate he represents to any use of its funds by a contract with third parties who have knowledge of the character of the property transferred, except in the ordinary and usual course of administration of the trust and in furtherance of its object.

6. INDIVIDUAL DEBT OF GUARDIAN. If a general guardian, without authority, carries on a business with the property and upon the credit of

his ward, resulting in losses and consequent indebtedness to third parties, such indebtedness must be regarded as the individual debt of the guardian.

7. MORTGAGING INFANT'S REAL ESTATE — VACATION OF COLLUSIVE PROCEEDING AND MORTGAGE. A mortgage upon an infant's real estate, obtained, through the forms of law, in pursuance of a collusive agreement between the infant's general guardian and the guardian's own creditor, the purpose and result of which were to substitute the property of the infant for the debt of the guardian and to deprive the infant of his property without sufficient consideration and for their own benefit, is properly set aside, in the hands of the creditor, by an action in equity at the suit of the infant, attacking the proceeding by which leave to mortgage was obtained from the court.

8. COMPLAINT FOR RELIEF FROM PROCEEDING AFFECTED WITH FRAUD — CHARACTERIZATION OF ACTS NOT NECESSARY. Where the complaint in an action in equity to vacate a proceeding to mortgage an infant's real estate alleges acts on the part of the defendants which necessarily lead to the legal conclusion, independently of the motive of the actors, that the proceeding was accomplished through fraud practiced by them upon both the court and the infant, it is not necessary, in order to state a cause of action, that the acts should be alleged in terms to be fraudulent.

9. PROCEEDING TO MORTGAGE INFANT'S REAL ESTATE — ABSENCE OF JURISDICTIONAL FACTS. Where the petition, proofs and all the papers in a proceeding under the statute (Code Civ. Pro. § 2348) show, without dispute or contradiction, that its sole purpose is to mortgage the property of an infant to pay the debt of another, and there is no proof or claim that the personal property and income of the infant are insufficient for the payment of all his own debts and for the necessary education of himself and family, but, on the contrary, the proof tends to show that they are sufficient, the court does not acquire jurisdiction to direct his property to be mortgaged.

10. JURISDICTION IN STATUTORY PROCEEDING. Although the court in which a proceeding to mortgage an infant's real estate is instituted is one of general jurisdiction, its jurisdiction in respect to such proceeding is nevertheless special and limited, and wholly dependent upon the statute ; and no presumption can be indulged in its favor.

11. DIRECT ATTACK UPON PROCEEDING, INCLUDING MORTGAGE. The fact that an action seeks to have the mortgage upon an infant's real estate, as well as the whole proceeding in which its execution was directed, set aside does not render the action a collateral, instead of a direct, attack upon the proceeding.

12. EQUITABLE CLAIM BY GUARDIAN. An equitable claim on the part of a general guardian against his infant ward furnishes no basis for the maintenance of a statutory proceeding to mortgage the infant's real estate.

13. VACATION, BY ORIGINAL ACTION IN EQUITY, OF ADJUDICATION IN PROCEEDING TO MORTGAGE. A court of equity has the right to entertain an original action by an infant, directly attacking an adjudicated proceed-

ing to mortgage his real estate, and has power to set aside the adjudication and the mortgage, when the allegations and proofs are to the effect that the proceeding was the result of a collusive agreement between the defendants, being his former general guardian and the holder of the mortgage, to obtain his property to pay a debt of the guardian to the holder of the mortgage and that their action was in fraud of his rights, and no rights of a *bona fide* purchaser, without notice, are involved.

*Warren* v. *Union Bank of Rochester,* 28 App. Div. 7, reversed.

(Argued October 25, 1898; decided November 22, 1898.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 6, 1898, upon an order reversing a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term, and granting a new trial.

This action was to set aside proceedings to mortgage certain real estate of the infant plaintiff, including the mortgage as a part of such proceeding. The mortgage was executed on behalf of the infant by his special guardian appointed in that proceeding, was payable to Gilman H. Perkins, and by him assigned to the Union Bank of Rochester. It was made to secure the sum of $25,000, and was upon the real property described in the complaint. The proceeding was instituted in the Supreme Court by Holmes B. Stevens as general guardian of the infant.

At the commencement of this action the plaintiff Warren was under fourteen years of age, and resided with his mother in the city of Rochester. In February, 1895, and for several years before, he was the owner in fee simple and in possession of the premises described in the complaint, upon a portion of which there was a brewery with the appliances for manufacturing beer and ale. Prior to November 25, 1891, Holmes B. Stevens was the general guardian of the person and property of such infant, and was the administrator with the will annexed of Edward K. Warren, who died seized and possessed of the real property in question and who was the grandfather of the infant. For some time prior to November 25, 1891, the defendant Stevens, as such administrator, had carried on

upon the premises the business of a brewer, buying and selling barley, and manufacturing beer and malt and ale. On that day the accounts of Stevens as administrator were finally settled, and all the personal property used in connection with the brewery was turned over by him as administrator to himself as guardian of the infant plaintiff, in pursuance of a decree of the Surrogate's Court. From that time until the first day of July, 1893, Stevens, claiming to act as general guardian of the infant, conducted upon the premises the business of a brewer, buying and selling barley and malt, manufacturing beer and malt and ale, selling the products of the brewery for cash and upon credit, and buying supplies for cash and upon credit until the first day of July, 1893. He then sold all the personal property used in that business to a corporation, and took in payment its stock of the par value of twenty-three thousand dollars. During that time he borrowed money of the Union Bank which he used in the business, and gave notes therefor signed "Haskell B. Warren, by Holmes B. Stevens, general guardian," and on the sixth day of May, 1895, he made and delivered to the bank a promissory note of that date for $25,431.90, which was signed in the same manner. This note represented the money and interest unpaid thereon which was borrowed by Stevens of the bank while carrying on the brewery business between the twenty-fifth of November, 1891, and the first of July, 1893.

In the month of February, 1895, as such general guardian, Stevens presented a petition to the Supreme Court setting forth the existence of the indebtedness to the bank upon such note, alleged that it amounted to twenty-four thousand five hundred dollars and upwards; that the bank was pressing for the payment of it and threatened to sue therefor unless it was paid; that the real property of the infant would be thus sacrificed if it was not paid; that the interests of such infant would be promoted by paying the debt to the bank; that the income of the infant from his property was not sufficient to pay that indebtedness, and that, unless the money could be raised to pay the bank, the property of the infant would be sacrificed

to pay it.   It was then alleged that William S. Kimball had offered to loan the sum of twenty-five thousand dollars upon the property, subject to the existing mortgage, at the interest or rate of six per cent per annum, payable quarterly, the principal to be paid one year from date, and the petitioner Stevens then asked that the real estate mentioned might be mortgaged for twenty-five thousand dollars under the direction of the court.

Such proceedings were had therein that the attorney for the defendant bank was appointed the special guardian of the infant.   The usual order of reference and proceedings before the referee were had, and a contract was made between the special guardian and Kimball, the president of the bank, by which it was agreed that a mortgage should be executed to him by the special guardian upon the real estate described in the complaint for the sum of twenty-five thousand dollars.

While the proceedings were pending, Kimball died, and a new agreement was made between the special guardian and the defendant Perkins, who was vice-president and a director of the bank, for the execution and delivery of a mortgage for the same amount.   The referee reported that it would be for the benefit of the infant to mortgage the property mentioned, for the reason that the brewery business conducted by Stevens as guardian was not productive and resulted in loss; that when the business was transferred to the corporation, it was largely in debt, and it became necessary to pay those debts to protect the estate; that a large sum of money was borrowed of the bank upon the notes of Stevens as guardian, aggregating twenty-four thousand five hundred dollars; that the bank had called in such loans and threatened to sue the notes unless paid, and that there was no money to pay the same unless it could be realized by mortgaging the property of the infant; that the latter had no funds or property to draw upon to pay that debt; that Perkins would loan twenty-five thousand dollars upon the property, and that from that sum should be paid the amount of the debt due the Union Bank, so far as the money would pay the same.

This report was received, and the special guardian was ordered to contract for mortgaging the infant's property. Subsequently he reported that he had entered into an oral agreement to mortgage the property to Perkins for twenty-five thousand dollars. He was then directed to execute the mortgage, and from the twenty-five thousand dollars first to pay the expenses of the proceeding which amounted to $430.50, and to pay the remainder, $24,569.50, upon the note of Stevens held by the Union Bank. Subsequently the special guardian executed and delivered to Perkins the mortgage mentioned, and received therefor the sum of twenty-five thousand dollars which was paid as directed by the previous order. Shortly afterwards Perkins executed and delivered to the bank an assignment of the mortgage, and the bank paid him the twenty-five thousand dollars he advanced.

The sole purpose of the proceeding to mortgage the infant's real estate was to discharge Stevens' indebtedness to the bank, and it was instituted in pursuance of an agreement between Stevens and the officers of the bank to secure that end. Perkins advanced the twenty-five thousand dollars to the special guardian under an agreement with Stevens and the bank that the net proceeds thereof should be applied upon the debt of the bank and to no other purpose, and that the bank should refund to Perkins the money paid by him and the mortgage should be assigned to the bank. The bank received the assignment of the mortgage with full knowledge that the money paid by the special guardian had been applied upon the indebtedness of Stevens which was secured by his notes, and that the purpose and effect of the proceeding to mortgage the infant's real estate was to secure and pay the individual debt of Stevens to the bank and for that purpose alone. Nothing has been paid upon this mortgage since its execution and delivery, but it remains an apparent lien upon the real property described.

*Charles J. Bissell* for appellants. The complaint states a cause of action, and the proper and, indeed, the only remedy

available to the infant plaintiff to set aside the mortgage and the proceedings resulting in its execution is by action. (*Reed* v. *McConnell*, 133 N. Y. 425; N. Y. State Const. art. 6, § 6; Code Civ. Pro. § 217; Cooper's Equity Plead. 88; *Richards* v. *Tayleur*, 1 P. Wms. 137; Daniel's Ch. Pr. 164; Freem. on Judg. § 513; *Bank of United States* v. *Richards*, 8 Pet. 128; *Savage* v. *Carroll*, 1 Ball. & B. 548; *McLemore* v. *C., St. L. & O. R. R. Co.*, 58 Miss. 514; *Loyd* v. *Malone*, 23 Ill. 43; *Kuchenbeiser* v. *Backart*, 41 Ill. 172; *Loyd* v. *Kirkwood*, 112 Ill. 329; *Allison* v. *Drake*, 145 Ill. 500; *Wright* v. *Miller*, 1 Sandf. Ch. 103; 8 N. Y. 9; *Losey* v. *Stanley*, 147 N. Y. 560; *Matter of Price*, 67 N. Y. 231; *Lefevre* v. *Laraway*, 22 Barb. 167; 2 Story's Eq. Juris. §§ 1334, 1337; *N. T. W. Co.* v. *Gilfillan*, 124 N. Y. 303; *Boynton* v. *Andrews*, 63 N. Y. 93; *Whittlesey* v. *Delaney*, 73 N. Y. 571, 574, 575; *Goldsmith* v. *Goldsmith*, 145 N. Y. 313; *Delaney* v. *Valentine*, 154 N. Y. 692; *Warner* v. *Blakeman*, 4 Keyes, 487.) The proceedings leading up to the mortgage and the mortgage itself were properly set aside by the judgment of the Special Term, upon the ground that the proceedings were collusively set on foot and conducted, and the debt for which the mortgage was given was not the debt of the infant, but that of another. (*Foster* v. *Fuller*, 6 Mass. 58; Schouler's Dom. Rel. 464, 479; *Hooper* v. *Eyles*, 2 Vern. 480; McPherson on Infants, 265, 271, 277; *Killick* v. *Flexley*, 4 Bro. C. C. 161, 163; *Booth* v. *Booth*, 1 Beav. 125, 129; *Cothan* v. *West*, 1 Beav. 380; *Ryan* v. *Smith*, 165 Mass. 303.) Neither the petition filed in the proceedings to mortgage the real estate of the infant, nor the proceedings subsequently had thereon, gave the Supreme Court jurisdiction to direct the execution of the mortgage. (*Rogers* v. *Dill*, 6 Hill, 415; *Matter of Turner*, 10 Barb. 552; *Baker* v. *Lorillard*, 4 N. Y. 257; *Onderdonk* v. *Mott*, 34 Barb. 106; *Ellwood* v. *Northrup*, 106 N. Y. 172; *Battell* v. *Torrey*, 65 N. Y. 294; Code Civ. Pro. § 2348; *Weinstock* v. *Levison*, 37 N. Y. S. R. 561; 26 Abb. N. C. 244; 20 Civ. Pro. Rep. 1.) The errors and omissions apparent upon the face of the proceeding are sufficient of them-

selves to warrant setting them, as well as the mortgage, aside.
(Code Civ. Pro. §§ 2348, 2354; *Hecker* v. *Sexton,* 43 Hun,
593, 595; *Matter of Van Buren,* 13 N. Y. Supp. 261, 263;
*Buderas* v. *Inman,* 20 Wkly. Dig. 83; *Knickerbacker* v.
*De Freest,* 2 Paige, 304; *Matter of Hazard,* 9 Paige, 365;
*A. Ins. Co.* v. *Barnard,* 26 Hun, 302; *Hardy* v. *Andrew,*
13 Civ. Pro. Rep. 413; *Matter of Lampman,* 22 Hun, 239;
*Matter of Valentine,* 72 N. Y. 184; *Ellwood* v. *Northrup,*
106 N. Y. 172; *Stilwell* v. *Swarthout,* 81 N. Y. 109.) The
defendant cannot have relief, in this action for any moneys
which upon an accounting might be ·shown to be properly
chargeable to the estate of the infant. (*Reed* v. *McConnell,*
133 N. Y. 425, 430; *Baird* v. *Mayor, etc.,* 96 N. Y. 567, 602,
603.)

*George F. Danforth* for respondents. The judgment of the
Special Term of May 15, 1897, vacating the mortgage and
annulling the proceedings which authorized its execution, was
erroneous. (*Godfrey* v. *Moser,* 66 N. Y. 250; *Conklin* v.
*Snider,* 104 N. Y. 641; *Reed* v. *McConnell,* 133 N. Y. 425;
Black on Judg. § 252; *Tooker* v. *Arnoux,* 76 N. Y. 397;
*Pope* v. *T. H. C. M. Co.,* 107 N. Y. 61–66.) The court under
whose direction the mortgage was executed had competent ·
jurisdiction · over the subject-matter, and over the parties;
power to entertain the application to mortgage and make the
order. (Code, § 2348.) That order is conclusive until set aside
or reversed; and is obligatory upon the parties who have
rights depending upon the same matters embraced within that
proceeding. (*Hyland* v. *Baxter,* 98 N. Y. 610; *Clarke* v.
*Van Surlay,* 15 Wend. 436, 20 Wend. 365; *Dyett* v. *N. A.
C. Co.,* 20 Wend. 570; *Noyes* v. *Blakeman,* 6 N. Y. 567,
580; *Randall* v. *Dusenbury,* 7 J. & S. 174; 63 N. Y. 645;
*New* v. *Nicoll,* 73 N. Y. 131; *Whittaker Case,* 4 Johns. Ch.
378; 2 R. S. 195, § 179; Code Civ. Pro. §§ 2348, 2360;
*Vilas* v. *Page,* 106 N. Y. 439; 2 Perry on Trusts, § 476;
*Van Slyke* v. *Bush,* 123 N. Y. 50; *Thompson* v. *Tolmie,* 2
Pet. [U. S.] 156; *Voorhees* v. *Jackson,* 10 Pet. 449; *Blakeley*

v. *Calder*, 15 N. Y. 617; *Simpson* v. *Hart*, 1 Johns. Ch. 91–97; *Bateman* v. *Willoe*, 1 Sch. & L. 201; *Ludlow* v. *Dale*, 1 Johns. Cas. 16; *Mayor, etc.*, v. *Brady*, 115 N. Y. 616; *Stilwell* v. *Carpenter*, 59 N. Y. 423.) The trial judge should have dismissed the complaint as requested by the defendant's counsel. (Code Civ. Pro. §§ 2348, 2358, 2360; *Hyland* v. *Baxter*, 98 N. Y. 610; *Van Slyke* v. *Bush*, 123 N. Y. 50; *Bailey* v. *Ryder*, 10 N. Y. 363; *Rome Ex. Bank* v. *Eames*, 1 Keyes, 588; *Kelsey* v. *Western*, 2 N. Y. 506; *Faure* v. *Martin*, 13 Barb. 394; 7 N. Y. 210–218; *Belknap* v. *Sealey*, 14 N. Y. 143; *McClung* v. *Foshour*, 47 Hun, 421; *Whittlesey* v. *Delaney*, 73 N. Y. 571; *Goldsmith* v. *Goldsmith*, 145 N. Y. 313; *Smith* v. *Nelson*, 62 N. Y. 286; *R. C. Co.* v. *Dimock*, 90 N. Y. 33; *Ward* v. *Town of Southfield*, 102 N. Y. 287; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68; *Mayor, etc.*, v. *Brady*, 115 N. Y. 599; *Stilwell* v. *Carpenter*, 59 N. Y. 423; 2 Abb. N. C. 263; *Verplanck* v. *Van Buren*, 11 Hun, 328; 76 N. Y. 247; *Krekeler* v. *Ritter*, 62 N. Y. 372–375; *Davoue* v. *Fanning*, 4 Johns. Ch. 199; *Patch* v. *Ward*, L. R. [3 Ch. App. Cas.] 203–226; *Clarke* v. *Van Surlay*, 15 Wend. 436; 20 Wend. 365.)

MARTIN, J.   It is obvious that the sole purpose and object of the proceeding to mortgage the infant's real estate was to obtain about twenty-five thousand dollars with which to pay the debt of Holmes B. Stevens to the defendant bank.   It is equally apparent that the proceeding was commenced and continued to its conclusion and that the assignment of the mortgage to the bank was made, under and in pursuance of an agreement between the officers of the bank and the general guardian that the real estate of the infant should be mortgaged to secure the debt of the former, and that the mortgage thus obtained should be substituted as security for and in place of his debt to the bank.

Stevens, as the general guardian of the infant plaintiff, had no right or authority to embark in, or conduct the business of, brewing, or the purchase and sale of barley or other mer-

chandise in the name of his ward, and employ therein the capital or credit of the latter. It is a well-established and elementary principle of the law relating to the rights and liabilities of trustees, that, in the absence of an express and sufficient authority therefor, the employment of trust property in trade or speculation, or in manufacturing, is a gross breach of trust upon the part of the trustee. This rule applies even where he simply continues the business or trade of a testator. It is the duty of a trustee to close up the trade or business; to withdraw the funds and invest them in proper security at the earliest convenient moment. (Perry on Trusts, § 454.)

The employment by trustees of the property or credit of an infant in trade, or in the prosecution of manufacturing or speculative enterprises, has been uniformly condemned as illegal, and constituting a *devastavit* of the estate. (*Wilmerding* v. *McKesson*, 103 N. Y. 329, 336; *King* v. *Talbot*, 40 N. Y. 76, 90; *Fellows* v. *Longyor*, 91 N. Y. 324; *Wetmore* v. *Porter*, 92 N. Y. 76.)

Another principle firmly established by the cases is, that trust funds invested by trustees in the hands of third persons who have knowledge of their character, still remain impressed with the obligation of the trust in the hands of the holder, and are subject to be reclaimed and restored to the trust fund. (*Wilmerding* v. *McKesson*, *supra*; *Wetmore* v. *Porter*, *supra*; *Rogers* v. *Squires*, 98 N. Y. 49; *Clark* v. *Hougham*, 2 B. & C. 149; Perry on Trusts, §§ 828, 832; Williams on Executors, 801; *Field* v. *Schieffelin*, 7 Johns. Ch. 150.)

It is beyond the power of a trustee to bind the estate he represents to any use of its funds by contract with third persons who have knowledge of the character of the property transferred, except in the ordinary and usual course of administration of the trust, and in furtherance of its object. (*Deobold* v. *Oppermann*, 111 N. Y. 531, 538.)

That these rules apply with much greater force where a trustee seeks to dispose of the real property of his *cestui que trust* who is an infant of tender years, to pay losses of a busi-

ness carried on by himself without any semblance of authority, there can be no manner of doubt. The relation which existed between Stevens as guardian and his infant ward was that of trustee and *cestui que trust*. Therefore, the debt for which the real estate of the infant was mortgaged was not the debt of the infant at all, but was the debt of the guardian, for which, so far as the record discloses, he had no claim against the infant or his estate either in law or in equity.

This transaction plainly and correctly stated is, that Stevens was individually indebted to the bank in the sum of about twenty-five thousand dollars. For the purpose of imposing a liability upon the property of the infant for what must be regarded as his own debt, and to relieve himself from its burden, he entered into an agreement with his creditor, by which it was agreed that a proceeding in court should be instituted to secure a transfer of the individual debt of the guardian to the property of the infant, and thus obtain the payment of the guardian's debt to the bank from the infant, who was in no way liable therefor. This was a clear and palpable fraud upon his rights. The guardian was guilty of a breach of his trust in embarking the property of his ward in business. When it proved disastrous he, in conjunction with his creditor, sought to impose the consequences of his own disaster upon his infant ward. This purpose was obvious. It is equally manifest that the bank and its officers must have understood that the purpose of the proceeding to mortgage was to wrongfully deprive the infant of his legal rights and property. That such was the effect of the transaction is clear, and it must be presumed that the parties who conferred and acted in concert in instituting and prosecuting the proceeding intended the natural consequences of their acts. Therefore, it must be regarded as conclusively established that, in pursuance of a plan or scheme contemplated and agreed upon, the officers of the bank and the general guardian intended to substitute and procured the property of the infant to be substituted in place of the debt of the guardian, and, thus, to that extent, defrauded the former of his rights in the property.

It was the plain legal duty of the general guardian not to waste the property of his ward, or suffer it to be wasted, and above all, not to be instrumental in effecting its loss. It was his duty to protect and not to destroy. Utterly disregarding that duty, he entered into an agreement with his own creditor to inaugurate a proceeding which would necessarily and wrongfully deprive his ward of his property. This arrangement between the officers of the bank and the general guardian amounted to collusion. Collusion, as defined by Bouvier, is, "An agreement between two or more persons to defraud a person of his rights by the forms of law or to obtain an object forbidden by law." Thus, the mortgage was secured in pursuance of a collusive agreement between the defendants, the purpose of which was to deprive the infant of his property without sufficient consideration and for their own benefit. Having entered into a collusive agreement to illegally deprive the infant of his property, in furtherance of it the general guardian alleged in his verified petition that unless the property of the infant was mortgaged it would be sacrificed, and that the interests of the infant would be promoted by paying the debt to the bank. The guardian in no way apprised the court of the collusive agreement between himself and the officers of the bank or that the debt for which he sought to mortgage the infant's property was his own and not that of the infant. On the other hand, he employed language in the petition which was well calculated to convey the idea to the court that the debt was the debt of the infant, although that fact was not directly alleged.

It is not seriously denied by the respondents that the infant's just rights have been imperilled by the execution and delivery of this mortgage. Nor is it claimed that he has no remedy for the injury he has sustained. Their principal contention is that a court of equity had no authority in this case to award the relief to which the infant plaintiff was entitled. It is difficult to believe that a court of equity is so impotent or its arms so paralyzed that it cannot reach out and remedy this wrong. More than twenty years since this court

declared : " It is the just and proper pride of our matured system of equity jurisprudence that fraud vitiates every transaction ; and, however men may surround it with forms, solemn instruments, proceedings conforming to all the details required in the laws, or even by the formal judgment of courts, a court of equity will disregard them all, if necessary, that justice and equity may prevail." ( *Warner* v. *Blakeman,* 4 Keyes, 487, 507.)

There seems no doubt of the general power of a court of equity, in proper cases, in one suit to grant relief from a decree or order in another, either by a bill of review, or by a supplemental bill in the nature of a review, or by an original bill. The general grounds upon which the interposition of a court of equity may be successfully invoked do not include cases where the sole ground of relief is that the former decision was contrary to equity or good conscience. While the courts of England and of this country have, with great uniformity, refused aid in all cases where their action would involve either the usurpation of appellate jurisdiction or the granting of a second opportunty of presenting a cause upon its merits, they have, upon the other hand, invariably extended it over a large and well-defined class of cases, to prevent the retention of an unconscientious advantage by a party in a court of law or equity, through his own fraud or through some excusable mistake or unavoidable accident on the part of his adversary. Where it appears to be against conscience to execute a judgment, which the injured party could not have prevented, or where he might have prevented it except for fraud or accident, unmixed with any fault or negligence of himself, a situation is presented which will justify a court of equity in granting the necessary relief. Without pursuing this subject farther to ascertain all the cases in which a party may avail himself of such an action where his defense was not available in the original action, or he was without fault on his part prevented from asserting it, it is sufficient for the determination of this case that the rule is firmly established that a judgment of either a legal or equitable tribunal may be

vacated by a court of equity if obtained by fraud or collusion. (*Smith* v. *Nelson*, 62 N. Y. 288; *Ward* v. *Town of Southfield*, 102 N. Y. 287; Freeman on Judgments, ch. 22.)

The proposition upon which the respondents rely to uphold the judgment of reversal, relates to methods and procedure rather than to substantive rights or existing equities. They contend that in no aspect of the case does the complaint herein state facts sufficient to constitute a cause of action. Examining it, we find that it is alleged that the plaintiff Warren is an infant; that he owned real estate of which the brewery and mortgaged property constituted a part; that the defendant Stevens carried on the business of a brewer there, and borrowed money as general guardian of the infant for that purpose; that he conducted the business in the name of the infant without any authority, and contracted individual debts at the Union Bank for which the infant was in no wise liable; that he and the officers of the bank entered into an agreement by which proceedings to mortgage the real estate of the infant were to be undertaken, and the premises mortgaged, for the purpose of discharging the indebtedness of the guardian, and for no other purpose; that in pursuance thereof the general guardian as such presented to the court a petition, setting forth such indebtedness as the debt of the estate, and praying that the real estate of the infant might be mortgaged for its payment; that upon that petition proceedings were had which resulted in a mortgage upon the infant's real property to secure twenty-five thousand dollars, and interest, and that the moneys secured thereby were employed to pay the expenses of that proceeding and the debt of the guardian; that the mortgage was given and the money was paid for those purposes and those alone, and that in pursuance of the original agreement between them, the mortgage was assigned to the bank with full knowledge in both the mortgagee and assignee that the moneys paid to the special guardian were obtained for and applied to the indebtedness of Stevens.

Thus, the complaint shows that the guardian, as trustee of his ward, was guilty of a breach of his trust, thereby incurring

an individual liability of about twenty-five thousand dollars. This was known to the bank and its officers. Notwithstanding these facts, the guardian and officers of the bank entered into an agreement to employ the processes and machinery of the court to mortgage the real estate of the infant to pay the individual debt of the guardian. This was a fraud upon the court as well as upon the infant and his rights. We think the complaint fully sets forth all the wrongful acts of the parties, and as fully states a cause of action as it would if it had charged all the acts thus alleged to have been fraudulently and wrongfully performed. The Code only requires a plain and concise statement of the facts constituting a cause of action. That, the complaint in this action contained. If the acts charged were wrongful or necessarily fraudulent, it was not essential to a cause of action that they should be charged as having been wrongfully or fraudulently performed. The acts charged were not less fraudulent because the word " fraud " or " fraudulent " was not employed by the pleader in characterizing them. ( *Warner* v. *Blakeman*, 4 Keyes, 487.)

Where, as in this case, the law presumes fraud because it is the necessary consequence of the acts alleged, and they carry in themselves inevitable evidence of fraud, independently of the motive of the actor, it is unnecessary to characterize the acts alleged as fraudulent or otherwise. Whether or not fraud exists, is a conclusion of law derived from facts and circumstances. (9 Ency. Plead. & Prac. 688 ; Beach's Mod. Eq. Juris. § 72.) Therefore, an allegation in a complaint of facts from which such a conclusion necessarily results must be regarded as sufficient. In *Maher* v. *Hibernia Ins. Co.* (67 N. Y. 290) there was no specific allegation of mistake of facts, but facts were averred in the complaint showing that the parties were mistaken as to the effect of the language employed, and it was held that this was a sufficient allegation to justify a reformation of the contract. In *Whittlesey* v. *Delaney* (73 N. Y. 575) the facts substantially as proved upon the trial and found by the court were averred in the complaint, although the precise and particular charge of fraud as a ground of relief was

35

not specifically, and in terms, put forth. It was there held that it was not necessary to employ the word "fraud" or "fraudulent" in order to characterize the transaction or specify the ground of relief. We think the general doctrine of these cases is applicable here, and that the absence of the word "fraud" or "collusion" does not render the averments of the complaint less sufficient to constitute a cause of action for the fraud or collusion of the defendants to deprive the infant of his property. In the language of Judge FINCH, "Calling names does not alter facts." We are of the opinion that the respondents' claim that the complaint was insufficient cannot be sustained.

Moreover, as the proof in the case established all the facts set out in the complaint, we think it was amply sufficient to justify the Special Term in setting aside the mortgage and proceedings to mortgage the infant's real estate upon the ground that they were procured by the fraud and collusion of the defendants.

The question whether the court before which the proceeding to mortgage was instituted acquired jurisdiction to grant the order directing the mortgage or to confirm the action of the special guardian in making it, is also presented. The jurisdiction of a court to direct the execution of a mortgage upon an infant's real estate is derived wholly from the provisions of the Code of Civil Procedure relating to that subject. (Tit. 7, art. 4, ch. 17.) It can only be exercised in such cases, under such circumstances and in the manner in which the statute directs. Section 2348 of the Code specifically points out the cases in which the real property of an infant may be sold, mortgaged or leased. The first is, "Where the personal property, and the income of the real property, of the infant, * * * are, together, insufficient for the payment of his debts, or for the maintenance and necessary education of himself and his family." This is the only provision which has any application to this case, and the one under which the general guardian sought to mortgage the infant's real estate. It is to be observed that it is only in case the personal property and

the income of the real property are insufficient to pay the debts, or for the maintenance and education of the infant and his family, that his property may be mortgaged. When we turn to the petition in the proceeding to mortgage, we find that the only debt for the payment of which it was sought to mortgage the infant's property was the debt of the guardian and not the debt of the infant at all. There was no allegation in the petition, nor proof upon the hearing, of the existence of any debt of the infant which the income of his property was not amply sufficient to pay. Indeed, it appears in the petition that he had sufficient personal property and income from his real property to pay all his debts, and, hence, the condition necessary under the statute to authorize the mortgage was not shown to exist.

The precise question presented is whether, where the petition, proofs and all the papers in a proceeding under this statute show, without dispute or contradiction, that its sole purpose is to mortgage the property of an infant to pay the debt of another, and there is no proof or claim that the personal property and income of the infant are insufficient for the payment of all his own debts and for the necessary education of himself and family, but, on the contrary, the proof tends to show that they are sufficient, a court acquires jurisdiction to direct his property to be mortgaged. We are of the opinion that the court acquired no jurisdiction in that proceeding to direct the property of the infant to be mortgaged for the debt of the guardian, and that there were no facts in the petition which would have justified the court in mortgaging the infant's property even for the payment of his own debts. The action of the court was invoked therein for a single purpose, which was to direct a mortgage upon the infant's real estate for an object which was wholly unauthorized by the statute. That it had no jurisdiction to do. The filing of a petition which disclosed the existence of a valid outstanding debt of the infant, which required the mortgaging of his property to pay it, was, under this statute, necessary to confer jurisdiction upon the court of the subject-matter. (*Agricultural Ins. Co.* v.

*Barnard*, 96 N. Y. 531.) In such a proceeding the require-
ments of the statute must be strictly followed. This court
has repeatedly held proceedings instituted under this statute
to be void when not taken in conformity with it. (*Battell* v.
*Torrey*, 65 N. Y. 294; *Matter of Valentine*, 72 N. Y. 184;
*Ellwood* v. *Northrup*, 106 N. Y. 172; *Losey* v. *Stanley*, 147
N. Y. 560, 573.) It has also held that a court of equity
has no inherent power to direct a mortgage of the real
property of infants. If we are correct in our conclusion that
the court had no jurisdiction of the proceedings to mortgage,
then the proceedings and mortgage are. open to collateral
attack for that reason, and should be set aside. (*Risley* v.
*Phenix Bank*, 83 N. Y. 318; *Losey* v. *Stanley*, 147 N. Y.
560.)

If it be said that the court before which this· proceeding
was taken was a court of general jurisdiction, still, as the pro-
ceeding does not fall within the ordinary proceedings of· a court
of common law, its· jurisdiction is yet special and limited,
wholly dependent upon the statute, and no presumption can
be indulged in favoring that particular jurisdiction. In that
class of cases the statute must be strictly pursued, whatever
jurisdiction the court may possess.

The respondents also insist that as the purpose of this action
was to set aside the mortgage and not solely to set aside the
proceedings to mortgage, the attack upon the proceedings was
collateral, and falls within the rule which prohibits a court
from re-examining its decision upon the same subject, and
cite Black on Judgments as sustaining the claim. (§ 252.)·
The authority cited is to the effect that to constitute a direct
attack upon a judgment it is necessary that a proceeding be
instituted for that very purpose. But if the action has an
independent purpose, and contemplates some other relief or·
result, although the overturning of the judgment may be
important or even necessary to its success, then the attack upon
the judgment is collateral and falls within the rule. On the
other hand, a complaint alleging that a judgment·is void, but
is apparently a·lien upon land described, is said by that author

to be a direct, and not a collateral, attack upon it.   This action was to obtain a judgment declaring all the proceedings void, including the mortgage.   The mortgage was at most a part of the proceeding, and had no validity independently of it.   It was as much a part of the proceeding as any paper or order in it.   Hence, we find nothing in the fact that the plaintiff asked to have the mortgage, as well as the other proceedings, set aside, which in any way changes the character of the action or deprives the plaintiff of the right to the relief sought.

It is also claimed that the learned Appellate Division seems to have in effect held that the guardian might have had some equitable claim against the infant, and, hence, he could properly maintain a proceeding to mortgage his real estate to secure or pay it.   We do not perceive any ground upon which such a doctrine can be upheld.   We not only find nothing in the statute which authorizes the inauguration of such a proceeding to obtain an accounting in equity between a guardian and his ward, and then impose upon his real estate a mortgage to secure the amount found due, but we find nothing in the record to show even the existence of any equity as a basis for such a claim.   The equities of the guardian were in no way involved in that proceeding.   It was a special proceeding under a special statute for a single purpose, which certainly did not include an accounting between the guardian and his ward.

The appellants claim that, under a well-established principle or rule in equity, where an important decree which deprives an infant of his inheritance has been rendered against him, either with or without actual fraud or surprise, the infant has a remedy during his minority, either by a bill of review, original bill in the nature of a bill of review, or by original bill directly attacking the decree for error, and cite as sustaining that proposition : Cooper's Eq. Plead. 97 ; *Richmond* v. *Tayleur* (1 P. Williams, 734) ; Daniell's Ch. Plead. & Prac. (vol. 1, p. 164) ; Freeman on Judgments, § 513 ; *Bank of U. S.* v. *Ritchie* (8 Peters, 128) ; *Savage* v. *Carroll* (1 Ball & B. 548) ; *McLemore* v. *C., St. L. & N. O. R. R. Co.* (58 Miss.

514); *Loyd* v. *Malone* (23 Ill. 43); *Kuchenbeiser* v. *Beckert* (41 Ill. 172); *Lloyd* v. *Kirkwood* (112 Ill. 329); *Kingsbury* v. *Sperry* (119 Ill. 280); *Allison* v. *Drake* (145 Ill. 500); *Wright* v. *Miller* (1 Sand. Ch. 103); *Wright* v. *Miller* (8 N. Y. 9); *Losey* v. *Stanley* (147 N. Y. 560); *Matter of Price* (67 N. Y. 231); *Lefevre* v. *Laraway* (22 Barb. 167); *McMurray* v. *McMurray* (66 N. Y. 175).

It is impossible, within the proper limits of this opinion, to review these authorities in detail. But a careful examination of them discloses that, while some are not applicable to the question here, yet the weight of their authority sustains the contention of the appellants, at least so far as they claim to be authorized to maintain an original action in equity to set aside the order and mortgage in this case as being in fraud of the infant's individual or property rights, and being procured by fraud and collusion of the parties. Those authorities fully justify this action, and authorize its maintenance upon the ground that the agreement between the defendants to obtain the infant's property to pay the debt of the guardian was collusive, and their action under it was in fraud of his rights, and as the rights of a *bona fide* purchaser, without notice, were not involved, they fully sustain the judgment of the Special Term in this case. In those cases many similar questions have arisen, and the courts have, with great uniformity, held that, under circumstances similar to those existing in this case, a court of equity has the right, by original bill, to set aside a judgment thus obtained.

As illustrative of the principle of these authorities, we may refer to a few in this state which seem to bear upon the legal questions involved in this controversy. In *Wright* v. *Miller* it was said that the jurisdiction of a court of chancery to set aside a decree obtained by fraud, upon an original bill filed for that purpose, has long been unquestioned. In that case an action had been commenced against infants, and a decree obtained setting aside a conveyance made in trust for their benefit, without giving them a day to show cause after they became of age, and it was held that such a decree was

erroneous, and that the infants, by an original bill filed, might be relieved against it. When that case reached this court it was again held that the infants were authorized to bring an action in equity to avoid the fraudulent disposition of the trust property, and that equity would entertain a suit to vacate a decree obtained by collusion between the trustees and tenants in possession of a trust estate to defeat the rights of persons entitled to equitable interests therein in remainder. In the *McMurray* case a party died seized of certain premises which were mortgaged to the defendant. The former devised to his widow, whom he made his executrix, a life estate in a portion of the premises, with remainder to the plaintiffs. The balance, with his personal property, he directed his executrix to sell, and with the proceeds pay and discharge his debts, including the mortgage. After the testator's death the mortgagee commenced an action of foreclosure, making the widow and the plaintiffs, who were infants, parties. They were served with process, but no guardian *ad litem* was appointed. The widow answered, but under an arrangement with the defendant that he would lease to her for life at a nominal rent a portion of the mortgaged premises, executed a deed to him of a portion of the premises directed to be sold. She withdrew her answer and stipulated that the defendant might take judgment, which he did, taking judgment by default against the plaintiffs, under which the premises were sold and bid in by the defendant. An original action was brought to set aside the judgment and sale, and it was held that the facts sustained a finding of fraud and collusion, and that the plaintiffs were entitled to have the decree of foreclosure avoided as to them, and could maintain an original action in equity for that purpose. In *State of Michigan* v. *Phœnix Bank* (33 N. Y. 9, 27) it was said: "It is needless to multiply cases showing that the courts, upon bill filed, will set aside as a nullity, a judgment, decree or award obtained by fraud." In *Hackley* v. *Draper* (60 N. Y. 92), where it was conceded that the Special Term had authority to hear a motion and grant the relief sought, it was held

that, even if the motion could have been made, an equitable action would lie to vacate an order of a court, obtained for a fraudulent purpose, and a sale made in pursuance of it. In *Tiernan* v. *Wilson* (6 Johns. Ch. 411) a sheriff's sale of real estate was set aside in an action brought for that purpose, upon the ground that it was fraudulent in law, as the sheriff was charged with a gross act of negligence and abuse of trust. The same question was again considered by this court in *Stevens* v. *C. N. Bank* (144 N. Y. 50), which was an action to set aside a judgment in the United States Circuit Court, and it was held that as it was fraudulent as against the plaintiffs, they might maintain an original action to set it aside.

Under the doctrine of these cases it is obvious that the plaintiffs had a right to institute this suit to set aside the proceedings and mortgage which were the result of a collusive agreement between the defendants, and which was obtained by a palpable fraud upon the rights of the infant, which presumably was known to all the defendants.

The contention of the respondents, that the same questions were before the Supreme Court in the proceedings to mortgage as are presented in this action, cannot be sustained. Surely there was no proof in the original proceeding of the collusion between the defendants to procure an appropriation of the infant's property to pay the guardian's debts.

After a full and careful examination of the facts and law applicable to the questions presented upon this appeal, we have reached the conclusion that the Special Term possessed abundant authority to entertain this action, and was fully justified by the facts in setting aside the proceedings to mortgage and the mortgage made therein, and that the learned Appellate Division erred in reversing the judgment of that court.

In reaching this conclusion we have recognized the correctness of the rule, invoked by the respondents, that the judgment of the Appellate Division should not be reversed, unless there was no error of law committed by the trial court to justify it. We have found nothing in the record to indicate the commission of any such error which authorized a reversal of ·

the judgment entered upon its decision. It follows that the judgment of the Appellate Division should be reversed, and that of the Special-Term affirmed, with costs to the plaintiffs in all the courts.

All concur, except PARKER, Ch. J., and GRAY, J., not voting.

Judgment reversed, etc.