(97 App. Div. 157.)

### In re SMITH et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. GUARDIANS—ACCOUNTING—EXPENDITURES.

A special guardian for infants should not be credited with money expended in improving their real estate; there being no proof that the improvements were necessary, or that the interest of the infants demanded it.

2. SAME—INTEREST.

A special guardian for infants, who fails to deposit money with the county treasurer as directed, should be charged interest thereon only at the rate it would have earned if so deposited; he not having used it as his own, but merely paid it to the executor of the infants' mother under a mistaken notion of his duty.

Appeal from Special Term, Kings County.

In the matter of the application of Joseph Smith and others, infants, for leave to sell real estate. From portions of an order, Joseph H. Smith and another of the petitioners appeal; Jacob Steinbacker, special guardian, being the respondent. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Charles Strauss (Timothy B. Halpin, on the brief), for appellants.
Rufus L. Scott (Andrew Lemon, on the brief), for respondent.

HOOKER, J. The learned referee correctly states the facts substantially as follows: John Smith, father of the objectors herein, at his intestate decease, prior to 1882, was the record owner of two pieces of land in Kings county, and was survived by his wife, Susan, and four children. Two of said children have since deceased, unmarried, intestate, and without issue. Some time later the widow brought an action to have the ownership of the land of which her husband died seised decreed to be in herself (the widow), and that she be decreed to be the owner thereof in her sole right; and in this action her own infant children were parties defendant. The case was tried—the infants appearing by a guardian ad litem—and judgment was rendered for the plaintiff; and the mother, under the judgment, received a deed from a special guardian appointed for that purpose, which deed purported to convey to Susan Smith all the real estate of which her husband died seised. In 1887 Susan Smith, having married one John Broenla, made her last will and testament, by which, after several minor bequests, she gave all of her estate to her children, with power to her executors to sell all of her real property and apply the proceeds for the children's benefit. Upon the subsequent death of Mrs. Broenla, this will was afterwards probated in this county. Mortimer C. Earl and John Smith duly qualified as executors. Smith never participated in the management of the estate, and is now dead. The real property above mentioned was the only real property owned by the testatrix in her lifetime. Earl, as executor, entered into a written contract with two different persons for the sale of the two parcels of real estate. An examination of the title disclosed that, in the action above mentioned, service was made upon the infants under 14 years of age by delivering to each of them the summons, but that no service was made upon any person with whom they resided, as required by law, and objection to the title was made—that, the court never having acquired jurisdiction over the infants, the executors had nothing to sell, and that the heirs of John Smith, the infants herein, were the owners of the property. To effect the sale of the property, this proceeding was brought, and the referee appointed reported that these infants were the owners of the land, and that a sale of the property would be for the best interests of the children. The special guardian herein was thereupon directed to sell the real property to pay incumbrances, taxes, expenses of the proceedings, and disbursements; to take as part of the purchase price a mortgage from one of the purchasers—Wade by name—for $1,500, due in two years, and a mortgage of $1,150, due in same time, from one Bennett. The order herein, dated April 10, 1889, then directed that out of the money in his hands the special guardian pay over "for and

on account of the infants the sum of $500." It does not state to whom the payment was made. The order further provides that the guardian pay to and deposit with the treasurer of Kings county the balance of the purchase money.

The special guardian seems to have acted under the direction of Earl, who appeared to be in the position of next friend of the infants. While the guardian's name was used, he did nothing but necessary and formal acts, and Earl alone was active. On the completion of the sale, and after the payments of the mortgage, interest, taxes, etc., on the property, and the expenses of the proceeding, but exclusive of the $500 directed by the order to be paid over for the children, the sum of $744.10 remained. This money was received by Earl, and the guardian herein deposited no part of it with the treasurer of Kings county, as directed to do. The special guardian in whose name the two mortgages were made collected some interest, and finally the principal of both mortgages, no part of which was deposited with the treasurer of the county as directed; but all of the moneys so collected were turned over to Earl, who apparently, as executor, deemed himself entitled to possession. In an accounting as executor, and in proceedings on objections to such account, Earl charges himself with having received the $744.16 above mentioned, the Bennett mortgage of $1,150, and interest thereon, as far as the same was collected, and with interest on the Wade mortgage for two years; but not with the sum of $180 interest on the $1,500 afterwards loaned to another, or with the principal sum of $1,500. One Allaben, since deceased, was the attorney for Earl at the time; and, on the payment of the Wade mortgage, as Earl testifies, without the knowledge or consent of Earl, Allaben loaned the $1,500 on a second mortgage to one Darling. Two years' interest, or $180 mentioned, was collected; and then, upon foreclosure proceedings, the whole $1,500 was lost. The guardian, in his accounts filed herein, credits himself with the payment to Earl of the amounts above set forth as having been received by Earl, and charges himself with the $1,500, together with interest thereon at the rate of 2 per cent. per annum from April 22, 1891, to the date of the accounting; claiming that 2 per cent. per annum is the interest which the fund would have earned, had it been with the county treasurer, as directed by the order herein.

Upon the filing of the account of the special guardian, the appellants, both of whom are now of full age, objected thereto, first, on the ground that he should charge himself with the principal sum of $1,500, which was lost on the Darling mortgage, with interest thereon at the legal rate, and with two installments of interest paid on that mortgage before it was lost, with like interest thereon; and, second, that the guardian should charge himself with all the amounts of moneys received by him as guardian, or which should have been received by him, from every source, together with a like rate of interest. The referee appointed to pass the account has charged him with the loss on the Darling mortgage; has recommended that he pay 2 per cent. interest, compounded annually, on all moneys he has, and that he be credited with all sums he paid Earl; that the interest rate be 5 per cent., simple, since the infants respectively reached full age. The Special Term confirmed the report, and the objectors appeal.

Although a large part of the record in the accounting of Earl as administrator, including his petition and account, and the opinion of the referee, were introduced in evidence before the referee in this proceeding, and although it has appeared as confusing to all parties correctly to trace some of these funds back and forth through the hands of the respondent and through the hands of Earl, the executor, it does not appear to me that the facts give rise to any serious complications. The special guardian has consented that he be charged with the $1,500 lost in the Darling mortgage, and with the $180 of interest received thereon; the only controversy as to that item now being the rate of interest. It is admitted that he turned over to Earl, the executor of the estate of the mother of the infants, all of the moneys which came into his hands as special guardian, and Earl has accounted in the Surrogate's Court for these and other sums. His account, with certain alterations as directed by the referee, appears to have been settled, and payments made to the beneficiaries of substantially the whole amount, save what may become due upon the adjustment of the interest.

The view I take of the disposition of the moneys received from the sale of the infants' lands under the order of April 10, 1889, in this proceeding, is that the expense of the illness and burial of Ellen Smith, late one of the infants, together with the sums paid for the board of these appellants and their sister while they were yet infants, should now be deemed a proper expenditure of the sum of $500 mentioned in that order, so far as the latter sum is applicable thereto. That sum of money was paid by the respondent to Earl, and the latter made the disbursements. It appears conclusively that the whole sum was expended for the purposes indicated, and as to that item appellants can have no further claim. Through Earl, as a channel, it reached the parties, and was expended for the purpose clearly indicated in the order appointing this special guardian.

It is not sufficient, however, in this proceeding, that the special guardian show that he has paid over these moneys to Earl, and that by Earl they have been expended for the interests of the infants, or in the settlement of their mother's estate, to relieve the guardian from liability for any further sums, except as to the moneys paid them upon their attaining their majority. The appellants concede the validity of these disbursements on April 15, 1899, of $1,047.50, payment of Kerz mortgage; $145.02, Allaben allowance; $10.25, contract and disbursements; $67.82, taxes; and $5, disbursements. What we have had to say about the $500 item leads to the conclusion that the respondent should be credited with that sum out of the amount of $744.16 paid to Earl on April 15, 1899. That leaves, in his hands $244.16, the amount he had in cash at the time of the sales to Bennett and Wade, after deducting the $500 item. There is also in his hands the several items of $57.50, interest on the Bennett mortgage, together with the sum of $1,150, principal of the Bennett mortgage, paid on or about May 1, 1894. With these sums, together with $150 interest on the Wade mortgage, $1,500 lost on the Darling mortgage, and the $180 interest thereon, the guardian should be charged, together with 2 per cent. interest thereon, compounded annually from the several dates these moneys came into his hands as guardian.

He should be credited with the sums paid to the infants. It seems that Earl made these payments, and it was entirely competent for the special guardian to pay them through Earl, if he chose to do so, instead of paying them personally. There is no proof in the record, as far as this proceeding is concerned, in relation to the amounts so paid. The suggestion appears from Schedule E of the executor's account, introduced in evidence before the referee, that these sums were $400 to Joseph Smith, December 4, 1895; $535 to Joseph Smith on June 12, 1897; $150 to D. J. Smith January 20, 1902; and yet two of these items seem to have been contested in the accounting in the Surrogate's Court.

This is all the guardian may be credited with, for they are the only disbursements which are permitted by the order appointing him. It is quite possible that, had he deposited these moneys with the treasurer of the county of Kings, some of it might, perhaps, under the direction of the court on further applications in this proceeding, have been directed to have been expended in behalf of the infants; but what such sums might have been, or what the papers might have shown upon such applications, is now a mere matter of speculation. It is certain that the avails of the sale of the lands of these infants were not applicable toward the payment of the debts of the estate of their mother. Warren v. Union Bank of Rochester, 157 N. Y. 259, 51 N. E. 1036, 43 L. R. A. 256, 68 Am. St. Rep. 777. And this no one now disputes. Their title was derived from their deceased father, and the action brought by the mother against them resulted in a void judgment, on account of the invalidity of the service upon the infants. It seems equally certain that the amount of moneys Earl expended in improving the real estate should not on this appeal be held to be a proper credit for the special guardian. No proof exists that there was any necessity for such improvements, and that the interest of the infants demanded it. New York Building Loan Co. v. Fisher, 23 App. Div. 363, 48 N. Y. Supp. 152; Warren v. Union Bank of Rochester, supra. The only suggestion which we have as to any such expenditure is the petition and account of Earl in the surrogate's proceeding. These items seem to have been in the neighborhood of $200. It is significant that the other side of Earl's account as executor shows that he received before the appointment of the special guardian an amount nearly as great as one-half of that sum from the rents and profits of the real estate, to which, the title being in the children, there can be no dispute that he was not entitled.

On the question of the rate of interest to be allowed to the children upon the several sums that came into the hands of the guardian and should have been deposited with the county treasurer, we think the conclusion of the referee is correct. The objectors should not complain that the county treasurer sometimes obtains, as they suggest in their brief, higher rates of interest than 2 per cent. on long-time deposits. The referee was generous in the extreme in stating in his report that he would listen to further proofs in respect to the rate of interest which it was customary for the county treasurer to allow, in the event that the objectors desired to show that they could have had greater than 2 per cent. from the treasurer, had the money been there

deposited. The appellants did not take advantage of this offer.. .It is true, the respondent did not comply with the terms of the order by which he was appointed; but he has shown no moral turpitude, and has not used the funds as his own. Under a mistaken notion of his duty, he paid the moneys to Earl. No showing is made to punish him. The guardian does not appeal from the order requiring him to pay 5 per cent. simple interest from the dates when the infants respectively attained the age of 21. This provision of the order was based upon a wise discretion of the Special Term.

The final order should be reversed, and the proceedings remanded to the Special Term for further action in accordance.with the conclusion reached in this opinion. All concur.